**STATE of Minnesota, Respondent,**

v.

**Fabian Maurice HENDERSON, Appellant.**

No. C5-85-1180.

Court of Appeals of Minnesota.

Feb. 25, 1986.

Review Denied April 18, 1986.

276

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Appellant Fabian Henderson was convicted of two counts of aggravated robbery, Minn.Stat. § 609.245 (1984), two counts of assault in the second degree, Minn.Stat.

§ 609.222 (1984), and two counts of burglary in the first degree, Minn.Stat. § 609.582, subd. 1(a) and (c) (1984). Issues raised on appeal include sufficiency of evidence, legality of the automobile stop, legality of search warrant evidence, admissibility of prior convictions, denial of a fair trial based on a sleeping juror, and sentencing. We affirm as modified.

## FACTS

Dorothy Gleason, age 67, was visiting her sister, Mary Binder, age 73, at Binder's home on December 4, 1984. They were in the kitchen when two men, one black, one white, broke through the door. The black man ripped the phone off the wall and ordered the two women to the floor. While the white man went into the bedroom, the black man remained in the kitchen and at gunpoint ordered the women to remove their jewelry. Jewelry, cash and traveler's checks were taken, as well as a new set of blue battery cables Gleason had just purchased. After the men left, the police were called. Gleason described the black suspect as 22 years old, 5'10" tall, 160 pounds, clean shaven, wearing a stocking hat and a red satin jacket.

The officer who took the burglary report noted a pattern of burglaries involving a "black and white" team in the area. Three days later, while on patrol in the area, he stopped an older vehicle. Two of the three people in the car matched the description in the Binder/Gleason burglary. The driver, a white male (Thomas Quigley), was arrested along with appellant. A search of the car revealed traveler's checks in Binder's name in the glove compartment. Various weapons and a set of new blue jumper cables were found in the trunk. Appellant was wearing a red satin jacket.

Gleason identified appellant in a photo display. The next day a search warrant was obtained for the person and residence of Dorothy Reed, appellant's girlfriend. Reed had moved the previous day, however, and the issuing magistrate orally authorized a change of address on the search warrant. When the police arrived at Reed's new address, they discovered two gold watches and a ring set that belonged to Binder and Gleason.

At trial Gleason identified appellant. A witness for the state, Michele Kirsch, testified that appellant and Quigley told her they had robbed a house on the evening of December 4, 1984 and had kicked the door open.

Appellant admitted going to the house with Quigley, but said he left after Quigley ripped the telephone off the wall. He claimed Quigley gave him the jewelry the next day and he gave it to Reed.

Appellant was convicted and sentenced on all counts as follows: Count 1 (aggravated robbery of Dorothy Gleason) 53 months; Count 2 (aggravated robbery of Mary Binder) 25 months, consecutive; Count 3 (assault in the second degree of Dorothy Gleason) 34 months, concurrent; Count 4 (assault in the second degree of Mary Binder) 34 months, concurrent; Count 5 (burglary in the first degree) 34 months, concurrent; and Count 6 (burglary in the first degree) 49 months, concurrent.

## ISSUES

1. Was the evidence sufficient to sustain the conviction?

2. Was the stop justified by reasonable suspicion?

3. Was evidence seized pursuant to the search warrant unlawfully admitted?

4. Did the trial court abuse its discretion in admitting appellant's prior convictions?

5. Was appellant prejudiced because of a sleeping juror?

6. Did the sentencing violate the prohibition against multiple punishment for separate offenses arising out of one behavioral incident?

7. Did the trial court's use of consecutive sentencing unfairly exaggerate the criminality of appellant's conduct?

## ANALYSIS

### I

■ The jury could reasonably have concluded that the evidence was sufficient to sustain the conviction. Appellant was identified by Gleason, who spent about 30 minutes in a well-lit kitchen with him. Further, appellant's clothing and physical characteristics matched the description given by the victims. Some of the victims' jewelry was recovered from the residence of appellant's girlfriend. A witness testified that appellant and Quigley admitted burglarizing a house that evening. We conclude the evidence was sufficient.

### II

■ Appellant challenges the initial stop which led to his arrest.

A stop is lawful if the officer is able to articulate * * * that he had a "particularized and objective basis for *suspecting* the particular persons stopped of criminal activity." The officer makes his assessment on the basis of "all of the circumstances" and "draws inferences and makes deductions—inferences and deductions that might well elude an untrained person."

*Berge v. Commissioner of Public Safety,* 374 N.W.2d 730, 732 (Minn.1985), quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981).

The officer testified that his attention was drawn to the older car going through a residential alley in an area that had been victimized by burglars at that time of day (5:00 p.m.). The car did not stop. The officer then observed heads popping up from inside the car. The officer testified that he deduced that burglary victims in the area were being followed home from the bus stop, that it was unusual for a car to drive through a residential alley without stopping, and that it was unusual for people to hide by ducking down in a car and then reveal their presence by popping up. We agree with the trial court that the stop was based on a reasonable suspicion of criminal activity and was not based on idle curiosity, whim, or caprice.

### III

■ Appellant claims his rights were violated when evidence seized during a search of his girlfriend's new address was admitted. The police obtained a warrant to search Dorothy Reed and her residence at 707 Logan Avenue North, # 6. Apparently appellant was staying there with his girlfriend, although the unit was actually listed in the name of K. Parker. When the police learned that Reed had moved to an address on Lyndale Avenue the day before, they telephoned the issuing magistrate who authorized the change of address orally and initialed the change afterwards.

Appellant had already been arrested and taken into custody when the search warrant issued. No evidence was presented that he was living at the address on Lyndale Avenue. It is well settled that a court may not exclude evidence under the fourth amendment unless it finds an unlawful search or seizure violates the defendant's own constitutional rights. *United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980) (citations omitted); *Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). Appellant never established that his rights were violated by the search of Reed's residence; he has no standing to challenge the search. *See generally* 3 W. Lafave, *Search and Seizure,* § 11.3 (1978 & Supp.1986). Moreover, appellant's argument that the police should have physically taken the search warrant to the magistrate for a change of address rather than telephoning has little weight. *See State v. Andries,* 297 N.W.2d 124 (Minn.1980).

### IV

■ Appellant claims the trial court erred in admitting two prior aggravated assault convictions. First, appellant never objected. Appellant testified against his counsel's advice. In fact, defense counsel told appellant his prior record would be admitted. Second, even if appellant object-

ed, there was no abuse of discretion. *See State v. Bettin,* 295 N.W.2d 542, 545–46 (Minn.1980).

Appellant also claims the trial court erred in allowing the prosecutor to delve into the details of the prior convictions. We have reviewed this claim and find that appellant "opened the door" to most of the inquiry by claiming on direct examination that he does not carry knives or guns. Appellant's prior convictions both involved use of knives. *See State v. Gardner,* 328 N.W.2d 159, 161 (Minn.1983). Other inquiries by the prosecutor concerning prior plea negotiations and similar matters were improper but clearly were not reversible error in this case.

## V

 After the verdict, appellant claimed a juror was sleeping. The trial judge, law clerk, bailiff and prosecutor did not see a juror sleeping. The juror denied sleeping; she admitted she was "fighting off" sleep during the trial court's instructions listing the six charged counts. Written instructions were sent to the jury. Appellant has established neither a prompt objection nor any misconduct resulting in prejudice. *See State v. Yant,* 376 N.W.2d 487 (Minn.Ct. App.1985); *State v. Henderson,* 355 N.W.2d 484 (Minn.Ct.App.1984).

## VI

The State concedes that appellant should not have been sentenced on Counts 3, 4, and 5 because of the prohibition against multiple punishment for separate offenses arising out of one behavioral incident. Minn.Stat. § 609.035 (1984).

## VII

Appellant claims the consecutive sentence on Count 2 for aggravated robbery, while not a departure, unfairly exaggerated the criminality of appellant's conduct. We disagree. Appellant's total sentence of 78 months is not unfair.

## DECISION

Appellant was not denied a fair trial and the evidence was sufficient to sustain his convictions. The trial court must vacate the sentences for Counts 3, 4, and 5.

Affirmed as modified.