Dean Anthony OLMSCHEID,
petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C3-87-95.

Court of Appeals of Minnesota.

Sept. 15, 1987.
Review Denied Nov. 6, 1987.

Robert D. Stoneburner, Paynesville, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Peggy L. Bunch, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Dean Olmscheid was arrested for driving while under the influence of alcohol and his driver's license was revoked under the implied consent law. He petitioned for judicial review of the license revocation, challenging the validity of the investigatory stop. The trial court sustained the revocation, and Olmscheid appeals. We affirm.

## FACTS

Burnsville Police Officer Brian Bonnema stopped Dean Olmscheid's car at approximately 1:30 a.m. on a dead-end road that leads off the north-south 35W frontage road in Burnsville. The dead-end road, which is Y-shaped, extends from the frontage road and forks in two directions. One prong curves northeast around a storage facility and stops. The other prong angles to the southeast for approximately one block and ends at a recycling center. Dodge of Burnsville, a car dealership, is immediately north of Cliff Road on the frontage road and its property extends along the dead-end road. None of the businesses were open at 1:30 a.m.

Bonnema had driven down the southeast fork of the dead-end road to check a locked fence at the recycling center to ensure that it was secure. He then drove down the northeast fork to the end of the road. As he turned around and started back toward the frontage road, he saw Olmscheid's car on the other fork, driving toward the frontage road. He merged behind Olmscheid and stopped his car.

At the hearing Bonnema explained that he made the stop for "suspicious activity," because Olmscheid was on the dead-end street behind the businesses after hours and he thought the car might be involved in a property theft. Bonnema patrolled the area because the car dealership had a history of property theft. It was not uncommon for people to reach the Burnsville Dodge lot by driving over the curb and grass in the area where Olmscheid was driving. The officer did not see Olmscheid drive over the curb or on private property and he observed no unlawful driving conduct. He had not received any calls reporting theft problems that evening or the previous evening.

Upon stopping Olmscheid, Bonnema observed indicia of intoxication and arrested him for driving while under the influence of alcohol. Olmscheid failed an Intoxilyzer test and his driver's license was revoked. Olmscheid appeals from the trial court order sustaining his license revocation.

## ISSUE

Did the police officer have a particularized and objective basis for making the stop of appellant's vehicle?

## ANALYSIS

A limited investigatory stop of an automobile is lawful if the officer can articulate a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). The officer's assessment must be based on "all the circumstances," and the officer may draw inferences and deductions which might elude an untrained person. *Id.* at 418, 101 S.Ct. at 695.

These circumstances include the officer's general knowledge and experience, the officer's personal observations, information the officer has received from other sources, the nature of the offense suspected, the time, the location, and anything else that is relevant. *Appelgate v. Commissioner of Public Safety*, 402 N.W.2d 106, 108 (Minn.1987).

Officer Bonnema stopped Olmscheid's car because he saw it on a dead-end road at approximately 1:30 a.m. coming from an area behind a car dealership which had recently experienced property theft. The

officer's suspicion was based on the surrounding circumstances, the time of night, the area from which Olmscheid was driving, and the past incidents of theft.

In his treatise on fourth amendment law, Professor LaFave observed that most field interrogations occur in connection with property crimes, which are infrequently solved by other means. 3 W. LaFave, *Search and Seizure* § 9.3(c), at 437 (2d ed. 1987).

> Especially during the hours of darkness, the police will have a sufficient basis to stop in order to investigate whether a burglary of a closed commercial establishment is pending or had occurred when the suspect is seen in such close proximity to that establishment that he appears to be something other than a mere passerby. Sometimes the time of day and nature of the area will be very significant in establishing the requisite proximity * * *.

*Id.*, § 9.3(c), at 440 (footnote omitted).

Similar fact situations have resulted in sustainable investigatory stops. In *State v. Henderson,* 382 N.W.2d 275 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. Apr. 18, 1986), an older car driving through a residential alley in an area where burglary had occurred at that time of day was stopped when the officer observed passengers who appeared to be hiding. In *Thomeczek v. Commissioner of Public Safety,* 364 N.W.2d 471 (Minn.Ct.App.1985), police stopped a vehicle that pulled out after parking near an empty lot with its headlights on in an area undergoing construction because they believed burglary, vandalism or theft might have occurred. This court upheld the stop. *See also State v. Mallory,* 337 N.W.2d 391 (Minn.1983).

The officer's knowledge of previous theft from Burnsville Dodge and the presence of the vehicle in the early morning hours in a commercial area with no residences on a road that does not connect to another roadway provide an objective and particularized basis for Officer Bonnema's suspicion of criminal activity. The evidence based on that stop is admissible for purposes of establishing an implied consent violation.

Olmscheid also asserts that the Commissioner did not prove that the testing officer had been certified in the operation of the Intoxilyzer. The record shows that the officer was certified at the time he administered the Intoxilyzer test to Olmscheid. We also observe that Olmscheid did not raise this issue below, which prevents consideration on appeal.

## DECISION

The trial court's order sustaining the revocation is affirmed.