**STATE of Minnesota, Appellant,**

v.

**Daniel Thomas PETRICK, Respondent.**

**No. C5–94–408.**

Supreme Court of Minnesota.

Jan. 6, 1995.

Rehearing Denied March 1, 1995.

Hubert H. Humphrey, III, Atty. Gen., and Paul T. Ostrow, St. Paul, for appellant.

Richard S. Eskola, Fridley, for respondent.

OPINION

ANDERSON, Justice.

This is a gross misdemeanor prosecution for aggravated driving under the influence and for three misdemeanor charges for driving under the influence. The court of appeals, in an unpublished 2–1 decision, affirmed the district court's pretrial order suppressing evidence on Fourth Amendment grounds and dismissing the complaint. In affirming the district court, the court of appeals reasoned that a Fourth Amendment "seizure" (or "stop") of defendant, Daniel Thomas Petrick, did occur and that the seizure was not justified. We conclude that if a seizure occurred, it was objectively justified. Accordingly, we reverse both the decision of the court of appeals and the order of the district court and remand to the district court for trial.

During the early morning hours of December 2, 1993, Officer John Burch, a police officer for the City of Blaine, was patrolling in his marked squad car in a residential area of the city. At about 1:10 a.m., Burch was southbound on Lincoln Street N.E. when he pulled to the side of the street in anticipation of making a u-turn so that he could go back north on Lincoln. Burch was stopped while he waited for the subject vehicle, which was going northerly on Lincoln, to pass by. Burch then made a u-turn and, within seconds of completing the u-turn, saw the subject vehicle turn into the driveway of "the first house around the curve," the "first place [the driver had] a chance to pull into." Burch observed that the subject vehicle's headlights were shut off just as the vehicle turned off the street into the "fairly long driveway," even though the vehicle continued to proceed into the driveway.

Burch, an officer with more than 16 years of experience, testified that in his experience most people who drive into their driveways at night wait until they are in the driveway before turning off their headlights, but that people trying to evade the police "commonly" turn off their headlights as quickly as possi-

ble when turning into a driveway, hoping the police will drive by. Burch testified that, based on his experience, "there was no question" in his mind that the driver of the subject vehicle was trying to "ditch" him. Accordingly, Burch pulled his squad car into the driveway to investigate the situation.

The driveway in question was fairly long and was wide enough for only one car. Burch stopped his squad car about one-half to three-quarters of a car length behind the subject vehicle and, by doing so, temporarily blocked that vehicle's means of egress. Burch did not turn on either the siren or the revolving lights of his squad car, nor did he call for the occupants of the subject vehicle to stop.

After stopping, the driver of the subject vehicle, later identified as Petrick, did nothing but just sit in the vehicle. Burch got out of his car and walked up to the subject vehicle to see what Petrick was doing. Petrick, who had two passengers with him, rolled down the driver's side window at Burch's approach. Burch immediately smelled a "real strong" odor of an alcoholic beverage coming out of the subject vehicle. Burch shined his flashlight into the vehicle and was able to observe that Petrick's eyes appeared to be quite red and watery. Burch testified that the smell of alcohol, combined with the red and watery eyes, led him to suspect that Petrick might have been consuming alcohol.

Burch next asked Petrick if he lived at that location and Petrick said no. When Burch asked if either of the passengers lived there, each said no. Burch asked Petrick for his driver's license and Petrick responded by saying it had been revoked. At that point, Burch asked Petrick to step out of his vehicle so that he could conduct field tests for sobriety and alcohol concentration. The results of these tests caused Burch to arrest Petrick and Petrick was subsequently charged with aggravated DWI, a gross misdemeanor, and three misdemeanor DWI charges.

At a contested omnibus hearing, Petrick moved to suppress the state's entire case and to dismiss the complaint, claiming that Burch's approach to Petrick on the morning of December 2, 1993; was not supported by probable cause. Burch was the only witness to testify at the hearing. The district court, without hearing oral argument or addressing Burch's conclusions that Petrick was attempting to evade him, ruled from the bench that there was not sufficient probable cause for issuance of the complaint and dismissed the complaint. The court concluded that the state had not proven there were sufficient "articulable grounds" to stop and arrest Petrick.

A majority of the court of appeals panel agreed with the district court. The majority concluded that by turning into the driveway, stopping behind Petrick's already-stopped car, and blocking Petrick's only means of egress, Burch seized Petrick. They concluded that, on the facts of this case, the seizure was not justified. The dissenting judge argued that no seizure occurred.

We need not decide whether a seizure occurred in this case because we conclude that if there was a seizure, it was objectively justified. In reaching this decision, we rely on *State v. Johnson,* 444 N.W.2d 824 (Minn. 1989). In *Johnson,* the driver and sole occupant of a pickup truck, after making eye contact with a state trooper, made a sudden turn off a main highway onto a side road. Not seeing the pickup truck or any dust and dirt that might be caused by the truck having traveled down the road, the trooper concluded the driver immediately pulled into a driveway. A very short time later, the pickup truck emerged from the side road, still driven by the same sole occupant. The trooper, inferring that the driver had turned off the highway to avoid him, motioned to the driver to stop. Making it clear that this was not a case in which the driver merely appeared startled and then slowed down at the sight of a police officer passing him, which would not have justified the stop, we said:

> While defendant's behavior may have been consistent with innocent behavior, it also reasonably caused the officer to suspect that defendant was deliberately trying to evade him. In short, the record we have on appeal in this case indicates that the trooper reasonably inferred that defendant was deliberately trying to evade him and that, as a result, the trooper reason-

ably suspected [defendant] of wrongdoing. The case is thus distinguishable from *State v. Johnson*, 257 N.W.2d 308 (Minn.1977), where, although there was some indication in the record that the officer may have observed what might be termed "an evasive maneuver" by the driver, the officer was totally unable to articulate at the omnibus hearing why he became suspicious of the vehicle. In the instant case, the available record indicates that the officer was able to articulate a sufficient basis for stopping the vehicle.

*Id.* at 827 (footnote omitted).

In the present case, Officer Burch did articulate a sufficient basis for stopping Petrick. Based on Petrick's behavior, Burch had a reasonable basis to infer Petrick was deliberately attempting to evade him and to suspect Petrick of wrongdoing. Therefore, we conclude that if a seizure occurred, it was objectively justified, just as the seizure was justified in *Johnson*.[1] We conclude that both the district court and the court of appeals erred in suppressing evidence on Fourth Amendment grounds and in dismissing the complaint.

Reversed and remanded to the district court for trial.

---

1.  *State v. Johnson,* 444 N.W.2d 824 (Minn.1989).