STATE of Minnesota, Respondent,

v.

Stephen Drew UBER, Appellant.

No. C7–99–896.

Court of Appeals of Minnesota.

Dec. 28, 1999.

**800**

Mike Hatch, Attorney General, St. Paul, MN (for respondent).

Michael J. Budka, Blaine City Attorney, St. Paul, MN (for respondent).

Thomas A. Rothstein, Minneapolis, MN (for appellant).

Considered and decided by LANSING, Presiding Judge, SHUMAKER, Judge, and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

Following the denial of suppression motions, the district court found Stephen Uber guilty of aggravated DWI and violating a restricted driver's license. Uber challenges both the constitutionality of the traffic stop and the conviction under the aggravated-DWI statute, Minn.Stat. § 169.129 (1998). We affirm the constitutionality of the traffic stop, but we conclude that the aggravated-DWI statute does not apply to restricted licenses and reverse Uber's conviction under that statute. Because the evidence establishes a DWI violation under Minn.Stat. § 169.121,

subd. 3(b) (1998), we direct that the judgment be entered for that offense and remand to the district court for resentencing.

## FACTS

The Commissioner of Public Safety canceled and denied Stephen Uber's driver's license as "inimical to public safety" in April 1994 after Uber was involved in several alcohol-related driving incidents from 1989 to 1992. Uber met rehabilitation requirements in June 1997, and the commissioner reinstated his driver's license on the condition that he abstain from use of alcohol and controlled substances. Uber signed a statement agreeing to abide by the restrictions in order to retain his driving privileges.

At about 2 a.m. on August 8, 1998, a police officer stopped Uber while he was driving his vehicle in a business park in the city of Blaine. The officer testified he was suspicious of Uber's driving behavior at that time of night in the particular commercial setting. Police had received several recent reports of burglaries in the area, and none of the businesses in the vicinity were open. The officer first saw Uber's car driving slowly and then observed it accelerate rapidly as it drove away from the officer's marked squad car. A short time later, the officer saw Uber's car returning from the opposite direction. The officer testified that Uber's car was moving very slowly, but "as soon as it saw my squad it began to accelerate again." The officer ran a registration check on the vehicle and activated his overhead lights. When the officer questioned him, Uber admitted he had been drinking and agreed to take field sobriety tests. The intoxilyzer test indicated an alcohol level above the legal limit.

Uber was arrested and charged with three enhanced gross misdemeanor DWIs, Minn.Stat. § 169.121, subds. 1(a), (d), (e), 3(d)(2) (1998), one count of aggravated DWI, Minn.Stat. § 169.129, subds. 1, 2(a) (1998), and one count of driving in violation of a restricted license, Minn.Stat. § 171.09

(1998). The three enhanced gross misdemeanor DWI charges were later dropped, following the Minnesota Supreme Court holding in *Baker v. State,* 590 N.W.2d 636 (Minn.1999), that the gross misdemeanor statutes violate the state constitutional guarantee to a 12–person jury for crimes punishable by a sentence of more than one year.

Uber unsuccessfully challenged in the district court the constitutionality of the stop of his vehicle. The court also denied Uber's motion to dismiss the charge of aggravated DWI. Uber waived his right to a jury, and the district court conducted a bench trial under the procedure set out in *State v. Lothenbach,* 296 N.W.2d 854, 857 (Minn.1980). The court found Uber guilty of aggravated DWI and driving in violation of a restricted license. Uber appeals from conviction and sentence.

## ISSUES

I. Did the traffic stop violate the Fourth Amendment?

II. Is a driver who has been issued a restricted license under Minn.Stat. § 171.09 subject to prosecution for aggravated DWI, Minn.Stat. § 169.129, subds. 1, 2(a) (1998)?

III. If a driver whose license has been reinstated under Minn.Stat. § 171.09 is not subject to prosecution for aggravated DWI under Minn.Stat. § 169.129, subds. 1, 2(a), can the driver be convicted of the lesser-included offense of misdemeanor DWI, Minn.Stat. § 169.121, subd. 3(b) (1998), if all the elements of the lesser-included offense have been established at trial?

## ANALYSIS

### I

■ When reviewing a district court's ruling on a Fourth Amendment issue based on undisputed facts, this court determines independently the existence of a constitutional violation. *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992). An officer may make an investigatory stop of a vehicle if the officer can articulate a particular and objective basis for believing the stopped individual was engaged in criminal activity. *State v. Johnson,* 444 N.W.2d 824, 827 (Minn.1989) (citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981)). The requirement is minimal, but the stop must be based on more than " 'mere whim, caprice, or idle curiosity'." *Marben v. State Dep't of Pub. Safety,* 294 N.W.2d 697, 699 (Minn.1980) (citation omitted). The reviewing court considers the totality of the circumstances, giving due regard to an officer's training and experience in law enforcement. *State v. Kvam,* 336 N.W.2d 525, 528 (Minn.1983).

■ The district court did not err in concluding that the investigative stop of Uber's vehicle was valid. Suspicious activity may itself provide the basis to stop a suspect. *See Johnson,* 444 N.W.2d at 827 (finding vehicle lawfully stopped when a trooper inferred driver was trying to evade him after he observed the motorist make eye contact with him and immediately turn onto a side road and then re-emerge); *see also State v. Petrick,* 527 N.W.2d 87, 88–89 (Minn.1995) (noting driver's actions of suddenly turning into a driveway and shutting off the lights before stopping provided sufficient basis for suspecting driver was attempting to evade the officer). Suspicious activity in an area that has had problems with crime augments the basis for a lawful investigatory stop. *See Cobb v. Commissioner of Pub. Safety,* 410 N.W.2d 902, 903 (Minn.App. 1987) (finding sufficient basis for officer to seize man observed in car parked on a street for ten minutes in area where burglaries had been reported at that time of day); *Olmscheid v. Commissioner of Pub. Safety,* 412 N.W.2d 41, 43 (Minn.App.1987) (holding stop lawful when car found on a dead-end road in the early morning in a commercial district where thefts had been a recent problem). Taking together the

reports of recent robberies, the time of night, the commercial nature of the area, and Uber's unusual driving behavior, we conclude that the district court properly ruled that the arresting officer's observations provided an adequate basis for stopping Uber's vehicle.

## II

Uber was convicted of violating the conditions of a restricted driver's license and also for aggravated DWI in violation of Minn.Stat. § 169.129 (1998). The aggravated-DWI statute provides in relevant part:

> It is a crime for any person to drive, operate, or be in physical control of a motor vehicle, the operation of which requires a driver's license, * * * in violation of section 169.121 * * * before the person's driver's license * * * has been reinstated following its cancellation, suspension, revocation, disqualification, or denial under [the specified statutory sections].

Minn.Stat. § 169.129, subd. 1 (1998). The commissioner had reinstated Uber's license with restrictions under Minn.Stat. § 171.09 (1998), which is not one of the sections specified in section 169.129.

Uber argues that the court erred in denying his motion to dismiss the charge of aggravated DWI because he was driving with a valid license at the time he was arrested. The district court rejected Uber's argument, concluding that a driver who violates the conditions of a restricted license is immediately placed under revocation. Since Uber stipulated that his license was restricted and did not contest he had used alcohol, the court concluded he was under revocation and therefore in violation of the aggravated-DWI statute.

The interpretation of a statute is a question of law, reviewed independently by this court. *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn.1996). If statutory language is plain and unambiguous, the court must give the language its plain meaning. *Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 274 (Minn. 1995). Plain meaning serves as a reliable guide to legislative intent and also provides an accessible and comprehensible standard to officials and citizens affected by the legislation. Applying the plain meaning, we are compelled to conclude that Uber's license had not been canceled, suspended, revoked, disqualified or denied under any of the sections listed in the aggravated-DWI statute at the time of the incident. His driving privileges had been reinstated by the commissioner, subject to specific restrictions. The aggravated-DWI statute applies to a person who drives a motor vehicle *before* their license has been reinstated. Thus, under the plain language of the statute, Uber was not in violation of the statute.

The state asserts that *State v. Hood*, 320 N.W.2d 415 (Minn.1982), supports Uber's conviction under the aggravated-DWI statute. We disagree. *Hood* determined that the issuance of a limited license does not constitute a reinstatement of defendant's driver's license for purposes of the aggravated-DWI statute and thus that any act of driving while under the influence before defendant's license was fully reinstated subjected him to prosecution under the aggravated-DWI statute. *Id.* at 416. The statutory section discussed in *Hood*, however, applies to limited licenses, not reinstated licenses. A limited license, in contrast to a reinstated license, is issued for specified purposes during the time that a person's license is revoked or suspended. *See* Minn.Stat. § 171.30 (1998). It is uncontested that Uber's license had been reinstated, subject to certain restrictions. Thus, *Hood* does not support Uber's conviction under the aggravated-DWI statute.

## III

The state requests that this court find Uber guilty of the lesser-included offense of misdemeanor DWI, Minn.Stat. § 169.121, subd. 3(b) (1998), if it reverses his conviction for aggravated DWI. On ap-

peal from judgment, this court may reduce a conviction to a lesser-included offense and remand for sentencing if it reverses the judgment. Minn. R.Crim. P. 28.02, subd. 12; *State v. Bergstrom* 413 N.W.2d 206, 211 (Minn.App.1987) (reducing conviction of third-degree arson to misdemeanor arson).

Uber does not contest that the evidence at trial supports a misdemeanor DWI conviction. We agree. Because driving a motor vehicle when the person's alcohol concentration is 0.10 or more is a lesser-included offense to the charge of aggravated DWI, we enter a finding of guilt on this offense and remand to the district court for resentencing.

## DECISION

We affirm the district court's conclusion that Uber's constitutional rights were not violated by the investigatory traffic stop. Because Uber was driving with a reinstated license at the time of his arrest, he may not be convicted for aggravated DWI, because that statute does not apply to persons driving with valid licenses subject to restrictions. The evidence supports Uber's conviction of the lesser-included offense of misdemeanor DWI.

**Affirmed in part, reversed in part, and remanded for resentencing.**