*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1170**

State of Minnesota,
Respondent,

vs.

Maurice Antwan Hegwood,
Appellant.

**Filed July 27, 2015
Reversed
Johnson, Judge**

Olmsted County District Court
File No. 55-CR-13-1382

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Terry L. Adkins, Rochester City Attorney, Kelly M. Wagner, Assistant City Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget K. Sabo, Assistant Public Defender, St. Paul, Minnesota; and

Peter M. Routhier, Bruce Jones, Faegre Baker Daniels, LLP, Special Assistant Public Defenders, Minneapolis, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Johnson, Judge; and Minge, Judge.[*]

_____

        [*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**JOHNSON**, Judge

A police officer stopped Maurice Antwan Hegwood's vehicle after he turned from a highway into the parking lot of a business that was closed for the night. The state charged Hegwood with driving while impaired, and Hegwood moved to suppress the evidence that was obtained during the stop. The district court denied the motion on the ground that the officer had a reasonable, articulable suspicion of criminal activity when he stopped Hegwood's vehicle. We conclude that the officer did not have a reasonable, articulable suspicion of criminal activity and, therefore, reverse.

## FACTS

At approximately 2:30 a.m. on February 17, 2013, Officer Gregory Marx of the Rochester Police Department was patrolling the area surrounding a bar where there recently had been fights and assaults at closing time. Officer Marx was driving north on U.S. highway 63, behind a vehicle in the same lane of traffic. Officer Marx saw the vehicle turn left into the parking lot of a towing business. Officer Marx thought it was unusual for the vehicle to turn into that parking lot because he knew that the towing business was closed at that time of night and that the parking lot has no other access to other businesses or other roads.

Officer Marx followed the vehicle into the parking lot and activated his emergency lights while the vehicle was still moving. After the vehicle stopped, Officer Marx approached the driver's side and spoke with the driver, Hegwood. Officer Marx

observed indicia of intoxication. He administered several field sobriety tests and then arrested Hegwood for driving while impaired (DWI).

The state charged Hegwood with DWI, in violation of Minn. Stat. § 169A.20, subd. 1(1), (5) (2012). Hegwood moved to suppress evidence on several grounds, including the ground that Officer Marx's stop of his vehicle is invalid. At an omnibus hearing, Officer Marx testified that he was suspicious of Hegwood's vehicle because he could not think of a reason for a person to enter that parking lot at that time of night except to commit a property crime. He also testified that Hegwood's vehicle may have turned into the parking lot to evade his squad car. The district court denied Hegwood's motion, concluding that "Officer Marx had a reasonable and articulable basis to stop [Hegwood's] vehicle on February 17, 2013, to wit: [Hegwood] admitted driving into a private parking lot at 2:36 a.m. with no other street or access point from the parking lot."

The parties agreed to a stipulated-evidence court trial. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court found Hegwood guilty. The district court stayed imposition of sentence for two years, ordered Hegwood to serve 48 hours in jail and 28 days on electric home monitoring, and assessed a $900 fine. Hegwood appeals.

## D E C I S I O N

Hegwood argues that the district court erred by denying his motion to suppress evidence. He contends that the stop of his vehicle was not justified by a reasonable, articulable suspicion of criminal activity.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. The Fourth Amendment also protects the right of the people to be secure in their motor vehicles. *See State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). A law-enforcement officer may, "'consistent with the Fourth Amendment, conduct a brief, investigatory stop'" of a motor vehicle if "'the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968))). A reasonable, articulable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. The reasonable-suspicion standard is not high, but the suspicion must be "something more than an unarticulated hunch," *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted), and more than an "inchoate and unparticularized suspicion," *Timberlake*, 744 N.W.2d at 393 (quotation omitted). An officer "must be able to point to something that objectively supports the suspicion at issue." *Davis*, 732 N.W.2d at 182 (quotation omitted); *see also Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880. If the underlying facts are undisputed, this court applies a *de novo* standard of review to a district court's conclusion that an investigatory stop is justified by a reasonable, articulable suspicion. *State v. Yang*, 774 N.W.2d 539, 551 (Minn. 2009).

Hegwood contends that the investigatory stop of his vehicle is invalid because Officer Marx did not identify any facts that objectively would support a reasonable,

4

articulable suspicion of criminal activity. The state's primary argument in response is that the combination of Hegwood's unusual activity and the recent incidents surrounding the nearby bar at closing time provided Officer Marx with a reasonable suspicion of criminal activity. In support of its argument, the state cites *State v. Uber*, 604 N.W.2d 799 (Minn. App. 1999), and *Olmscheid v. Commissioner of Public Safety*, 412 N.W.2d 41 (Minn. App. 1987), *review denied* (Minn. Nov. 6, 1987), two cases in which this court concluded that a police officer's investigatory stop was justified by a reasonable suspicion of criminal activity, specifically, burglary or theft. *Uber*, 604 N.W.2d at 801-02; *Olmscheid*, 412 N.W.2d at 43. In both *Uber* and *Olmscheid*, however, there recently had been burglaries or thefts in the immediate area. *See Uber*, 604 N.W.2d at 800; *Olmscheid*, 412 N.W.2d at 42. In this case, by contrast, there is no evidence in the record that there had been recent burglaries, thefts, or other property crimes in the area, either at the towing company or at any nearby property. The problems associated with the nearby bar were of a different type, and Officer Marx did not testify that he suspected that the driver of the vehicle had been at the bar or was associated with the bar in any way. *Uber* and *Olmscheid* are also distinguishable from this case in that way.

In addition, in both *Uber* and *Olmscheid*, an officer came upon a vehicle that already was present in a particular location where property crimes previously had been reported. *See Uber*, 604 N.W.2d at 800 (stating that officer saw vehicle driving at 2:00 a.m. in suburban business park where burglaries recently had been reported); *Olmscheid*, 412 N.W.2d at 42 (stating that officer saw vehicle driving at 1:30 a.m. on dead-end road in suburban commercial area where thefts recently had been reported). Because the

5

officer in each case did not know what the driver of the vehicle had been doing in that area before the officer observed the vehicle, the officer had additional reasons to be suspicious and, thus, a reason to investigate. *See Uber*, 604 N.W.2d at 800; *Olmscheid*, 412 N.W.2d at 42. In this case, however, Officer Marx was following Hegwood's vehicle before he saw it turn into the parking lot, and he testified that there was "nothing" suspicious about Hegwood's vehicle before the turn. Officer Marx followed Hegwood's vehicle into the parking lot and activated his emergency lights before Hegwood's vehicle had come to a stop. Because Officer Marx was able to observe Hegwood's vehicle at all relevant times, he could be assured that no criminal activity had yet occurred. Thus, *Uber* and *Olmscheid* also are distinguishable from this case with respect to the information that was available to the investigating law-enforcement officer. *See Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880 (asking, "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" (internal quotation marks omitted)).

In the absence of reasons such as those that existed in *Uber* and *Olmscheid*, Officer Marx's stop of Hegwood's vehicle could be justified only by the possibility that the occupants of the vehicle might have intended to engage in criminal activity, such as a property crime at the towing business. That was Officer Marx's reason for the stop, but it was based solely on the fact that Hegwood turned from a highway into a parking lot of a business that was closed during night-time hours. But a driver might turn into a parking lot along a highway for many reasons other than criminal activity. A driver might, for example, do so to safely turn around before driving in the other direction or to use a

6

smartphone. A driver also might do so for a legitimate purpose connected with the business. We acknowledge that "'innocent activity might justify the suspicion of criminal activity.'" *State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998) (quoting *State v. Johnson*, 444 N.W.2d 824, 826 (Minn. 1989) (citing *United States v. Sokolow*, 490 U.S. 1, 9, 109 S. Ct. 1581, 1586 (1989))). And we note that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Illinois v. Rodriguez*, 497 U.S. 177, 185, 110 S. Ct. 2793, 2800 (1990) (quotation omitted). But here, the only factors Officer Marx articulated that suggest possible criminal activity are the time of night, the closed business, and the lack of access to or from the lot. When considered in their totality, these factors do not create the requisite probability of criminal activity needed to convert Officer Marx's "unarticulated hunch," *Davis*, 732 N.W.2d at 182, into a reasonable, articulable suspicion "that criminal activity may be afoot," *Terry*, 392 U.S. at 30, 88 S. Ct. at 1884.

We note that Officer Marx could have waited nearby for a relatively short period of time to see whether the vehicle promptly exited the parking lot or to observe the activities of the occupants of the vehicle. Additional observation might have provided him with additional information that would have corroborated his hunch, thereby allowing him to form a reasonable, articulable suspicion of criminal activity. That was an important aspect of *Terry*. The officer in that case observed two men make more than "a dozen trips" past the front window of a store before the officer formed a reasonable, articulable suspicion that they were "casing" the store, which justified his decision to stop them to investigate. *See Terry*, 392 U.S. at 6-7, 88 S. Ct. at 1871-72; *see also State v.*

7

*Schrupp*, 625 N.W.2d 844, 847-48 (Minn. App. 2001) (reviewing facts of *Terry* and emphasizing that officer waited and watched until hunch "ripened" into reasonable suspicion), *review denied* (Minn. July 24, 2001). By stopping Hegwood's vehicle immediately after it turned into the parking lot, Officer Marx took action before he had acquired enough information to form a reasonable, articulable suspicion of criminal activity.

Before concluding, we note that the state has alluded to an alternative basis for the investigatory stop, namely, that Officer Marx stopped Hegwood's vehicle because he believed that the driver may have been trying to evade him. At the evidentiary hearing, Officer Marx mentioned this motive as a possibility, but it was not the basis for the district court's decision. On appeal, the state does not develop the argument by citing caselaw in support of this alternative ground. We note that evasive behavior can provide an officer with a reasonable, articulable suspicion for an investigatory stop. *See, e.g.*, *Wardlow*, 528 U.S. at 124-25, 120 S. Ct. at 676; *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366, 113 S. Ct. 2130 (1993); *Johnson*, 444 N.W.2d at 827. But Minnesota courts have identified "some types of motorist behavior that are not unusual and . . . standing alone will not provide justification for an investigatory stop." *Schrupp*, 625 N.W.2d at 848. The record of the evidentiary hearing indicates that the manner in which Hegwood turned into the parking lot was not unusual. Officer Marx did not articulate any particular reason why he believed that Hegwood was trying to evade him, such as, for example, a particularly abrupt turn or the absence of a turn signal. *See id.* (noting that evasive conduct must be unusual to support reasonable, articulable

8

suspicion).  Thus, the absence of sufficiently unusual behavior by Hegwood when he turned into the parking lot would preclude a finding that the investigatory stop is justified by a reasonable, articulable suspicion that Hegwood was trying to evade Officer Marx.

In sum, Officer Marx did not have a reasonable, articulable suspicion of criminal activity when he stopped Hegwood's vehicle.  Therefore, the district court erred by denying Hegwood's motion to suppress evidence.  Our conclusion that the district court erred in its pre-trial ruling is dispositive of the case.  *See* Minn. R. Crim. P. 26.01, subd. 4(a), (c); *see also State v. Yang*, 814 N.W.2d 716, 718, 722-23 (Minn. App. 2012) (reversing conviction without remand after concluding that district court erred in pre-trial ruling in case tried pursuant to rule 26.01, subdivision 4).

**Reversed.**