*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1398**

State of Minnesota,
Respondent,

vs.

Henry James Johnson,
Appellant.

**Filed August 1, 2016
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-14-24582

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Henry James Johnson was convicted of fifth-degree controlled substance crime after he was found to be in possession of cocaine. He argues that the district court erred by

denying his motion to suppress evidence. We conclude that the police officer who stopped Johnson's vehicle had a reasonable, articulable suspicion of criminal activity, which justified the investigatory stop. Therefore, we affirm.

**FACTS**

Shortly after midnight on August 20, 2014, a Brooklyn Park police officer, Sergeant Faust, was on patrol when he heard the dispatcher report an anonymous 911 caller's tip that there had been "an altercation" in a nearby commercial parking lot, which involved two or more men and possibly involved a handgun. The dispatcher also stated that the caller believed that the men involved in the altercation were driving "a blue Chrysler 300 type vehicle" and "a black or dark-colored Suburban."

One or two minutes later, when Sergeant Faust was approximately one mile away from the parking lot referenced by the dispatcher, he saw "a dark or black . . . Chevy Tahoe or GMC Yukon," which the officer considered to be a match for the Suburban vehicle that was reported to be involved in the altercation. Sergeant Faust saw the vehicle turn off a well-traveled street onto a less-traveled street and saw that the driver of the vehicle "turned its lights off while still in motion and quickly pulled into a parking space." Sergeant Faust considered the driver's conduct to be unusual and suspected that the vehicle might have been involved in the altercation in the parking lot.

Sergeant Faust followed the vehicle onto the less-traveled street, pulled up behind it, and activated his emergency lights. Sergeant Faust approached the vehicle and ordered the driver, later identified as Johnson, to get out. Sergeant Faust saw Johnson either put something into or retrieve something out of the center console. Sergeant Faust was

2

concerned that Johnson may have been storing or retrieving a weapon. Sergeant Faust again ordered Johnson to get out of the vehicle. After Johnson did so, Sergeant Faust performed a pat search of Johnson's person and a brief search of his vehicle. Upon opening the center console, Sergeant Faust saw a baggie containing a "white rock-like substance," which later tested positive for cocaine.

The state charged Johnson with one count of fifth-degree controlled substance crime, in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2014). In March 2015, Johnson moved to suppress the evidence obtained during the investigatory stop on the ground that Sergeant Faust did not have a reasonable, articulable suspicion of criminal activity to justify the investigatory stop. At an evidentiary hearing, the state called Sergeant Faust to testify about the circumstances that led to the stop of Johnson's vehicle. At the conclusion of the hearing, the district court made an oral ruling on the record. The district court concluded that, although the 911 caller's report, by itself, was insufficient to justify the stop, Sergeant Faust's decision to stop Johnson's vehicle was supported by a reasonable, articulable suspicion in light of the 911 call and Johnson's "evasive driving conduct." Thus, the district court denied the motion.

In April 2015, the parties agreed to a stipulated-evidence court trial and agreed that Johnson could challenge the district court's suppression ruling on appeal. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court found Johnson guilty. The district court imposed a sentence of 17 months of imprisonment, stayed for three years with conditions. Johnson appeals.

3

**D E C I S I O N**

Johnson argues that the district court erred by denying his motion to suppress evidence. Specifically, he argues that Sergeant Faust did not have a reasonable, articulable suspicion of criminal activity to justify the investigatory stop of his vehicle. Johnson does not challenge Sergeant Faust's search of the center console of his vehicle or his subsequent arrest. If the relevant facts are undisputed, this court applies a *de novo* standard of review to a district court's determination of reasonable, articulable suspicion. *State v. Yang,* 774 N.W.2d 539, 551 (Minn. 2009).

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. The Fourth Amendment protects the right of the people to be secure in their motor vehicles. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). As a general rule, a law-enforcement officer may not seize a person in a motor vehicle without probable cause. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). But a law-enforcement officer may, consistent with the Fourth Amendment, conduct a brief investigatory detention of a person in a motor vehicle if the officer has a reasonable, articulable suspicion that the person might be engaged in criminal activity. *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)).

A reasonable, articulable suspicion exists if "the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880.

4

Reasonable suspicion requires "something more than an unarticulated hunch"; "the officer must be able to point to something that objectively supports the suspicion at issue." *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted); *see also Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880. The reasonable-suspicion standard "takes into account the totality of the circumstances," *i.e.*, "the whole picture." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quotation omitted).

"The information necessary to support an investigative stop need not be based on the officer's personal observations." *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). An investigative stop may be based on an informant's tip "if it has sufficient indicia of reliability." *Id.* An informant may be reliable because he or she has provided truthful information to law enforcement in the past. *Adams v. Williams*, 407 U.S. 143, 146-47, 92 S. Ct. 1921, 1923-24 (1972). In addition, a private citizen who acts as an informant for the first time may be presumed to be reliable. *Davis*, 732 N.W.2d at 182-83; *Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980). The presumption of reliability is stronger if the informant identifies himself or herself. *Davis*, 732 N.W.2d at 183; *City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 889-90 (Minn. 1988). Such an informant is more likely to provide truthful information because he or she can be held accountable for providing false information. *Adams*, 407 U.S. at 146-47, 92 S. Ct. at 1923-24; *Shepherd*, 420 N.W.2d at 889-90.

The reliability of an informant's tip also may depend on the quality and quantity of the information provided. *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990). Some informants do not "provide extensive recitations of the basis of their

everyday observations." *Id.* at 329, 110 S. Ct. at 2415. But even if an informant provides information that is lacking in detail and cannot be corroborated, law-enforcement officers may be justified in conducting an investigative seizure. *See id.* at 329, 110 S. Ct. at 2415-16. That is so because

> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Id.* at 330, 110 S. Ct. at 2416; *see also Adams*, 407 U.S. at 145, 92 S. Ct. at 1923. On the other hand, if an informant cannot be deemed reliable, and if the informant provides too little information about suspected criminal activity and too little information about the basis of the informant's knowledge, the reasonable-suspicion standard may not be satisfied. *See, e.g.*, *Florida v. J.L.*, 529 U.S. 266, 270-71, 120 S. Ct. 1375, 1378-79 (2000).

In this case, the identity of the anonymous 911 caller is unknown. The anonymous 911 caller never met with a police officer face to face. Similarly, the record is silent about the anonymous 911 caller's basis of knowledge about the reported altercation in the parking lot. The anonymous 911 caller's report was short and was not verified. The anonymous 911 caller did not predict Johnson's future behavior. The district court, in ruling on Johnson's motion, stated that, if the stop were based solely on the tip from the "unknown and unknowable 911 caller," the stop would not have been unsupported by reasonable suspicion. *See J.L.*, 529 U.S. at 268, 270-71, 120 S. Ct. at 1377, 78-79 (reasoning that tip alone did not support reasonable, articulable suspicion of criminal activity).

6

The district court, however, denied Johnson's motion because Sergeant Faust's stop was not based solely on the anonymous 911 caller's tip. The district court specifically found that the stop was based on the combination of the anonymous 911 caller's tip and Sergeant Faust's observation of evasive conduct. The district court found that Sergeant Faust saw Johnson turn off his headlights "while he was still maneuvering the car," which the district court stated is, "even to a layperson, . . . not normal or reasonable behavior."

Evasive conduct may be a legitimate reason for an officer to form a reasonable, articulable suspicion of criminal activity to justify an investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000); *State v. Smith*, 814 N.W.2d 346, 351-54 (Minn. 2012). If a person appears to show a "concern for the presence of the police," such as by "flee[ing] at the sight of an officer," such conduct "may be taken into account by the police and . . . together with other suspicious circumstances . . . may well justify a stopping for investigation." *State v. Johnson*, 444 N.W.2d 824, 826 (Minn. 1989) (quotation omitted). Evasive conduct by itself, in some circumstances, may be enough to allow an officer to form a reasonable, articulable suspicion of criminal activity. *Id.* at 826-27.

The record supports the district court's finding that Sergeant Faust reasonably stopped Johnson's vehicle in part because of suspicions aroused by Johnson's evasive conduct. Sergeant Faust testified that Johnson turned off his headlights "while still in motion and quickly pull into a parking space." Sergeant Faust also testified that, "at that point in time, I suspected that the vehicle was involved" in the reported altercation in the nearby parking lot.

7

Furthermore, the caselaw supports the district court's reasoning that Johnson's evasive conduct provided a legitimate basis for Sergeant Faust's suspicion of criminal activity. This case is fairly similar to *State v. Petrick*, 527 N.W.2d 87 (Minn. 1995), in which a police officer saw a "vehicle's headlights [being] shut off just as the vehicle turned off the street into [a] fairly long driveway, even though the vehicle continued to proceed into the driveway." *Id.* at 87. The supreme court concluded that the driver's unusual conduct gave rise to a reasonable, articulable suspicion of criminal activity. *Id.* at 89. In this case, Johnson's similarly evasive conduct supports Sergeant Faust's suspicion of criminal activity, especially in combination with the anonymous 911 caller's tip.

Before concluding, we note Johnson's contention that the district court's reasoning is flawed because his vehicle did not match the vehicle described by the anonymous 911 caller. Johnson is correct that a perfect match did not exist because a Chevrolet Suburban, a Chevrolet Tahoe, and a GMC Yukon are different models. But Sergeant Faust testified that those models are very similar to each other such that, in his experience, persons who describe vehicles to law-enforcement officers often confuse them with each other. Sergeant Faust's experience is consistent with common knowledge about large sport-utility vehicles. In similar circumstances, the supreme court has commented, "Given that considerable discretion will be given to an officer's decision to conduct an investigatory stop, the decision to stop a vehicle very similar in body style but slightly lighter in color cannot be considered mere caprice or whim." *State v. Waddell*, 655 N.W.2d 803, 810 (Minn. 2003). In light of this caselaw, as well as Sergeant Faust's testimony about his experience with vehicles similar to a Chevrolet Suburban, it was reasonable for him to be

8

on the lookout not only for the models actually described by the anonymous 911 caller but also for any other model that is reasonably similar.

In sum, the district court did not err by denying Johnson's motion to suppress evidence.

**Affirmed.**