Hubert H. Humphrey, III, Atty. Gen., St. Paul, Scott Hersey, Isanti County Atty., Dean E. Emanuel, Asst. Isanti County Atty., Cambridge, for respondent.

Robert Munns, Anoka, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and HUSPENI and SCHULTZ *, JJ.

**STATE of Minnesota, Respondent,**

v.

**Mark Craig JOHNSON, Appellant.**

**No. C1–88–2261.**

Court of Appeals of Minnesota.

May 9, 1989.

Review Granted July 12, 1989.

### OPINION

HUSPENI, Judge.

Mark Johnson appeals from a conviction of driving after revocation of his license, asserting the invalidity of the *Terry* stop. The stop was based on the state trooper's inference that the appellant had taken evasive action to avoid contact with the trooper. Because an evasive action alone is an insufficient basis for a *Terry* stop, we reverse.

* Acting as judge of the Court of Appeals by ap-     pointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

The parties stipulated to the facts, briefly recapitulated as follows:

On June 27, 1987, at approximately 7:40 a.m., a Minnesota state trooper was driving north on Highway 65 near Isanti when he noticed a vehicle having problems. The trooper proceeded to the crossover to go south to meet the vehicle.

While driving through the crossover, the trooper noticed a red pickup truck proceeding in the southbound lanes and made eye contact with the vehicle's driver, who was alone.

The trooper proceeded south after the red pickup, drove by and saw the truck turn on the Tower Systems Road and disappear from view. The trooper was familiar with that road and was of the opinion that the red pickup pulled off into a driveway because he could not see the pickup on that road.

The trooper then proceeded to lend assistance to the stalled vehicle. As he reached the stalled vehicle, he saw the red pickup come out from the Tower Systems Road. The driver was still alone. The trooper drew the inference that the driver of the red pickup was trying to avoid him. As the pickup approached southbound, the trooper signaled to the driver to pull over and requested the driver's license. The driver, appellant, had had his license revoked, was arrested and charged with driving after revocation.

Appellant's motion to dismiss the charge on the basis of an improper stop was denied. Appellant, after trial to the court on stipulated facts, was found guilty of driving after revocation. Sentence was stayed and this appeal followed.

## ISSUE

Was the investigatory stop proper based on the circumstances, including appellant's behavior, and the trooper's inference of evasive action on the part of the appellant?

## ANALYSIS

In determining the validity of the investigatory stop where the facts are undisputed, the reviewing court analyzes the facts and determines as a matter of law whether the observations of the trooper provide an adequate basis for the stop. *Berge v. Commissioner of Public Safety*, 374 N.W. 2d 730, 732 (Minn.1985). The "clearly erroneous" test does not apply in the absence of rejected testimony. *Id.*

The current law concerning investigatory stops begins with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

*Id.* at 21, 88 S.Ct. at 1880 (footnote omitted).

The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of [a vehicle] * * *. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.

*U.S. v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981) (citations and footnote omitted). The stop should be assessed from the point of view of the trained officer, who may make inferences and deductions that an untrained person would not otherwise make. *Thomeczek v. Commissioner of Public Safety*, 364 N.W. 2d 471, 472 (Minn.Ct.App.1985). "[T]he totality of the circumstances—the whole picture—must be taken into account." *Cortez*, 449 U.S. at 417, 101 S.Ct. at 695.

In this case the appellant was observed driving around 7:30 a.m. near the city of Isanti. There is nothing in the record to show the trooper noted any suspicious behavior by the appellant as he drove by. The record shows no infractions noted before the stop in the operation or maintenance of the vehicle, no broken taillights, no changing lanes without signaling, no speeding. There is no prior knowledge of the license revocation, and no proximity to a reported crime. The trooper merely noted that after making eye contact appellant turned off the highway and his vehicle was

no longer visible. After a short time, appellant reappeared southbound on the highway, and the trooper, inferring that appellant was trying to avoid him, made the stop.

In *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975), the officers stopped defendant after they observed him drive down an alley and park his car in a stall behind an apartment around 6:00 p.m. while it was still daylight. The court found that the officers had observed no unlawful or suspicious behavior nor did they have prior knowledge of revocation. The stop was ruled unconstitutional. *Id.* at 302, 232 N.W.2d at 910. *See also Delaware v. Prouse*, 440 U.S. 648, 650–51, 99 S.Ct. 1391, 1394, 59 L.Ed.2d 660 (1979) (where the patrolman stated "I saw the car in the area and wasn't answering any complaints, so I decided to pull them off").

In *McKinley* and *Prouse*, the defendants were literally stopped for no reason. This case may differ in some respects from those. Here the trooper and appellant made eye contact; shortly thereafter appellant turned off the highway and reappeared on the highway a short time later. The trooper inferred that appellant was attempting to avoid him. While the trooper did give some explanation as to why he stopped appellant, this court must make a dual inquiry: was the trooper's inference rational, and, if so, was it sufficient to reasonably warrant a stop under the "totality of the circumstances." *See Terry*, 392 U.S. at 21, 88 S.Ct. at 1879–80; *Cortez*, 449 U.S. at 417, 101 S.Ct. at 695.

We believe the trooper's inference that the appellant wished to avoid contact was not necessarily irrational. There are, of course, alternative, equally rational explanations for someone exhibiting appellant's behavior. For example, such a person may have simply turned off at the wrong exit or he may have delivered something to a home on Tower Systems Road. While the alternative explanations do not necessarily make the trooper's particular inference irrational, the plausibility of the alternatives shows the trooper's particular inference

was not so well founded as to be the only rational inference.

Assuming the inference was not irrational, we proceed with the second part of our inquiry.

> More difficult, however, is the question of whether [reactions to the presence of police] may, *in and of themselves*, justify a stopping for investigation. Perhaps at least some of them do, for, as the Supreme Court acknowledged in *Peters v. New York*, [392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) ] "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea."* However, some actions which may fairly be said to be in response to an awareness that police are in the vicinity are not of that type * * *.

3 W. LaFave, *Search and Seizure* § 9.3(c) (2nd ed.1987) (footnotes and citations omitted) (emphasis in original).

Several Minnesota cases have found a stop based upon evasive action combined with other indicia of possible criminal or peculiar conduct to be constitutionally sound. *See State v. DeRose*, 365 N.W.2d 284 (Minn.Ct.App.1985) (stop justified where officer responding to silent burglary alarm observed only one vehicle at the scene and the vehicle took erratic and evasive action after seeing police vehicle); *City of St. Paul v. Vaughn*, 306 Minn. 337, 237 N.W.2d 365 (1975) (stop justified when after pursuit suspect fled with what appeared to be a .45 caliber automatic pistol in hand); *State v. Valstad*, 282 Minn. 301, 165 N.W.2d 19 (1969) (stop justified when pursuing officers at 2:30 a.m. observed car which at least partially matched description of car previously identified as involved in a crime turn down alley, turn off its lights, and proceed at high rate of speed).

While there appears to be no Minnesota case which has considered whether an evasive action alone is sufficient to justify a *Terry* stop, other states have addressed this issue. In *People v. Thomas*, 660 P.2d 1272, 1275–76 (Colo.1983), a case which more strongly suggests evasive action than the present case, the court ruled the inves-

tigatory stop unjustified when defendant, after making eye contact with the officers, ran to a nearby building with his hand in his pocket. In the present case, after the eye contact, there is no indication of any additional conduct, not even change in speed. Nor was there anything about the time of day (morning) or the vicinity of the incident which would have bolstered justification for the stop. Appellant simply turned off the road.

In *People v. Fox*, 97 Ill.App.3d 58, 52 Ill.Dec. 219, 421 N.E.2d 1082 (1981) the court stated:

> the mere fact that the vehicle drove away at the approach of a squad car does not serve as a justifiable basis for conducting a *Terry* stop.

*Id.* at 64, 52 Ill.Dec. at 23, 421 N.E.2d at 1086, citing *People v. James*, 44 Ill.App.3d 300, 302–04, 3 Ill.Dec. 88, 358 N.E.2d 88 (1976).

In *Wilson v. State*, 433 So.2d 1301 (Fla. 2nd Dist.Ct.App.1983), the fact that the defendant changed directions after seeing a police officer was found insufficient by itself to justify an investigatory stop. *See also* LaFave, section 9.3(c), notes 161–164.

The *Prouse* court recognized that

> [t]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.

*Id.* 440 U.S. at 654, 99 S.Ct. at 1396 (footnote omitted). In balancing the state's interest in effective traffic law enforcement against an individual's Fourth Amendment interests, the rule in other jurisdictions is that an evasive act alone, without other indicia of criminal activity or extreme behavior, does not justify an investigatory stop. We find the rationale of the cases from foreign jurisdictions to be persuasive. Further, the federal constitutional dimensions of the rule developed in those other jurisdictions support application of it in Minnesota as well.

We also find persuasive the *Prouse* court's observation that:

> An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. * * * Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As [*Terry*] recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Id.* at 662–63, 99 S.Ct. at 1400–01 (footnote omitted).

Although the trooper's inference of evasive action may not have been unreasonable here, without other indicia of criminal behavior, it was not reasonable for him to make the additional inference of *mens rea*. Since nothing in the record indicates any other indicia of criminal activity or any extreme behavior, the conduct of appellant did not justify the *"Terry"* stop.

### DECISION

The trial court erred in concluding that the *Terry* stop, based on a possibly evasive act alone, was proper. The decision of the trial court is reversed and the conviction for driving after revocation is vacated.

Reversed.