**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Mark Craig JOHNSON, Respondent.**

No. C1-88-2261.

Supreme Court of Minnesota.

Sept. 1, 1989.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Scott Hersey, Isanti County Atty. and Dean E. Emanuel, Asst. Isanti County Atty., Cambridge, for appellant.

Robert Munns, Anoka, for respondent.

YETKA, Justice.

The decisive issue in this case is whether the stop, which led to the arrest and conviction of defendant for driving after revocation, was justified. The district court determined that defendant's evasive driving conduct immediately after seeing a state trooper gave the trooper an objective basis for suspecting defendant of criminal wrongdoing, thereby justifying a brief limited investigative stop. The court of appeals not only disagreed, but also adopted a "rule" that "an evasive act alone, without other indicia of criminal activity or extreme behavior, does not justify an investigatory stop." *State v. Johnson*, 439 N.W.2d 400, 403 (Minn.App.1989). We reverse the decision of the court of appeals and reinstate the judgment of conviction.

The stop issue was raised in the district court by a pretrial motion to dismiss. An

evidentiary hearing was held, at which the arresting officer, a state trooper, testified. The presiding judge made findings of fact consistent with the testimony of the officer. Subsequently, defendant waived his right to a jury trial and agreed to submit the issue of his guilt to the trial court, a different judge, on the basis of a stipulation to the effect that defendant drove after revocation, that he was stopped and that he admitted his guilt. The stipulation incorporated by reference the findings made in connection with the denial of the motion to dismiss. After being found guilty as charged, defendant filed a notice of appeal. Ordinarily, a convicted defendant seeking review of an omnibus hearing ruling on a fourth amendment issue should provide the appellate court with a transcript of the omnibus hearing. Instead of ordering a copy of the transcript, defendant filed a notice stating that he intended to proceed under Minn.R.Crim.P. 28.02, subd. 8, which says that, in lieu of the record, the parties may submit the case on the basis of a statement of the case; here, on the basis of the stipulated facts. The state did not oppose this.

Accordingly, our understanding of the facts is based solely on the findings made by the judge who presided at the pretrial hearing on the motion to dismiss. Those findings indicate that, at 7:40 a.m. on June 27, 1987, Trooper Steve Sjerven was in the crossover preparing to turn south on Highway 65 just north of Isanti in order to help the driver of an apparently disabled car on the shoulder. As he waited to turn, he saw a red pickup truck heading south on Highway 65 and made eye contact with the defendant, who was the driver and sole occupant of the truck. Immediately, the driver turned the truck right onto what is called Tower Systems Road and, as the trial court put it, "appeared to immediately disappear." Not seeing the pickup truck or any dust or dirt that might be caused by the truck having traveled down the road, the trooper concluded that the truck must have pulled immediately into a driveway. As the trooper pulled up to assist the car on the shoulder, he saw the pickup emerge from Tower Systems Road and turn south onto Highway 65, this a "very short time" after having turned onto Tower Systems Road. The trooper saw that the truck was driven by defendant, who was still alone. Inferring that defendant had turned off Highway 65 for the purpose of avoiding him, the trooper motioned defendant to stop. Defendant did so, identified himself and told the trooper his license had been revoked. After verifying this information, the trooper arrested defendant for driving after revocation.

In denying the motion to dismiss, the trial judge reasoned:

> The facts in this case reasonably support the inference that the defendant was trying to avoid the Trooper. The clear inference of his action was avoidance of the Trooper. While the action may be explained as consistent with lawful activities, that is not the test. There were specific articulable facts using [sic] a reasonable suspicion of criminal activity.
>
> Additionally, the stop or the intrusion upon the defendant in this matter was relatively minor. The stop and request could not have lasted more than a couple of minutes.

The court of appeals concluded first that the trooper's inference that defendant saw him and was trying to avoid him by turning off the highway was "not necessarily irrational." 439 N.W.2d at 402. However, after reviewing a number of cases from other jurisdictions, the court adopted what it referred to as a "rule" that "an evasive act alone, without other indicia of criminal activity or extreme behavior, does not justify an investigatory stop." *Id.* at 403.

■ In our opinion, the United States Supreme Court's decisions do not support the court of appeals' new rule. The United States Supreme Court's decisions require only that the officer have a "particular and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The suspicion that the officer must be able to articulate must be more than an

unarticulated "hunch;" the officer must be able to point to something that objectively supports his suspicion. *United States v. Sokolow,* —— U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *see State v. Johnson,* 257 N.W.2d 308 (Minn.1977). In addition, a trained police officer is entitled to draw inferences on the basis of "all of the circumstances * * * inferences and deductions that might well elude an untrained person." *Cortez,* 449 U.S. at 418, 101 S.Ct. at 695. The Court recently reiterated that the concept of reasonable suspicion is not reducible to a "neat set of legal rules" when it rejected the Ninth Circuit's mechanical two-part test for determining reasonable suspicion. *United States v. Sokolow,* —— U.S. at ——, 109 S.Ct. at 1584–86. It has also repeatedly noted that innocent activity might justify the suspicion of criminal activity. *Id.* at 1586–87. *Accord, State v. Combs,* 398 N.W.2d 563, 565–66 (Minn. 1987) (rejecting trial court's conclusion that, if the observed facts are consistent with innocent activity, then the stop is invalid).

The Court has also suggested quite strongly that it would not agree with the court of appeals' new rule. For example, in *Florida v. Rodriguez,* 469 U.S. 1, 6, 105 S.Ct. 308, 311, 83 L.Ed.2d 165 (1984), the Court said that the defendant's attempt to evade airport security officers after they looked at him aroused "justifiable suspicion." Professor LaFave's analysis is as follows:

> Another rather common situation is that in which police suspicions are based in whole or in part upon the reactions of the suspect in response to the appearance of police in the vicinity. Police are trained to be suspicious of such reactions, and stops are not infrequently made because of them. As one empirical study concluded: "A person who manifests concern for the presence of the police, who repeatedly glances at the officer, who changes his direction in an apparent attempt to avoid confronting the officer, or who flees at the sight of an officer will commonly be detained and questioned." It is not to be doubted that such reactions may be taken into account by the police and that together with other suspicious circumstances these reactions may well justify a stopping for investigation. Courts have so held when persons already suspected to some degree kept a watch upon the police, turned to conceal something from the police, tried to conceal themselves from the police, or drove away, ran away or walked off at a fast pace upon the approach of the police.

> More difficult, however, is the question of whether such actions as these may, *in and of themselves,* justify a stopping for investigation. Perhaps at least some of them do, for, as the Supreme Court acknowledged in *Peters v. New York,* [392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968)], "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea.*" However, some actions which may fairly be said to be in response to an awareness that police are in the vicinity are not of that type; persons on the street watch police and engage in similar activities out of interest in what the police are doing and out of a desire to avoid some minor misstep, such as a minor traffic violation, which would involve them unnecessarily with the police. Thus, it has properly been held that the "hesitancy of a car to pass a police cruiser and a glance at the officer by a passenger," a "startled look at the sight of a police officer," appearing nervous when a police car passed, looking away from police activity in the vicinity, pointing toward police, or quickening one's pace upon seeing the police are not, standing alone, sufficient bases for an investigative stop. By contrast, such stops have been upheld when the individual made repeated efforts to avoid police contact, when he engaged in a combination of several different possibly furtive actions, and when the person engaged in a rather extreme means of avoidance such as high-speed flight.

3 W. LaFave, *Search and Seizure* § 9.3(c) at 448–51 (2d ed.1987) (footnotes omitted).

■■■ As we see it, the issue is partly a semantic question depending on what one

means when one says that the defendant engaged in evasive conduct. On the one hand, if a driver merely appears startled at the sight of a police officer passing him and then slows down a bit and if a reasonable police officer would not infer any wrongdoing from the driver's response, then the officer does not have a particular and objective basis for suspecting the driver of criminal activity and may not stop the driver. On the other hand, if the driver's conduct is such that the officer reasonably infers that the driver is deliberately trying to evade the officer and if, as a result, a reasonable police officer would suspect the driver of criminal activity, then the officer may stop the driver. In other words, to repeat what we said earlier, in all stop cases, the decision for the trial court at the suppression hearing depends on whether the officer is able to articulate at the hearing a "particular and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981).

■ In this case, the trooper did not base his decision to stop on "mere whim, caprice, or idle curiosity." *See Marben v. Minnesota Dep't of Public Safety*, 294 N.W.2d 697, 699 (Minn.1980) (quoting *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y. S.2d 67, 74, 330 N.E.2d 39, 44 (1975)). Moreover, the trooper did not base his decision to stop solely on the fact that the defendant made a quick turn off the highway seconds after he looked the trooper in the eye. The trooper also observed the defendant turn off the secondary street into a driveway or side street and then resume his driving on the highway within a minute after turning off the highway. While defendant's behavior may have been consistent with innocent behavior, it also reasonably caused the officer to suspect that defendant was deliberately trying to evade him. In short, the record we have on appeal in this case indicates that the trooper reasonably inferred that defendant was deliberately trying to evade him and that, as a result, the trooper reasonably suspect-

ed petitioner of wrongdoing. The case is thus distinguishable from *State v. Johnson*, 257 N.W.2d 308 (Minn.1977), where, although there was some indication in the record that the officer may have observed what might be termed "an evasive maneuver" by the driver,[1] the officer was totally unable to articulate at the omnibus hearing why he became suspicious of the vehicle. In the instant case, the available record indicates that the officer was able to articulate a sufficient basis for stopping the vehicle.

Our decision, of course, should not be interpreted in any way as making it easier for police to justify stopping motor vehicles. We simply reaffirm the standard which we have followed in numerous cases: that a police officer may make a brief limited investigative stop if the officer has a particular and objective basis for suspecting the person stopped of criminal activity. Because we conclude that the rule adopted by the court of appeals makes an unjustified refinement of this standard and believe that the record on appeal indicates that the trooper had a particular and objective basis for suspecting the defendant of wrongdoing, we reverse the decision of the court of appeals and reinstate defendant's judgment of conviction.

Reversed and judgment of conviction reinstated.

WAHL, J., dissents and files opinion in which POPOVICH, C.J., joined.

WAHL, Justice, dissenting.

I respectfully dissent. The activities of the defendant in the instant case did not justify an investigative stop under the principles articulated in *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). It is true, as the majority notes, that the fourth amendment of the United States Constitution permits officers to temporarily stop citizens for investigative purposes if the officer has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, —— U.S. ——,

---

1. *Johnson*, 257 N.W.2d at 309 (Yetka, J., dissenting).

109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). In this case the "suspicious activity" consisted of defendant leaving the highway shortly after making eye contact with a passing state trooper; the trooper being unable to see any trace of the defendant's vehicle as he drove by the Tower Systems Road where the defendant had turned off, and the defendant's re-entering the highway shortly thereafter. From these relatively innocuous actions the trial court concluded, and the majority agrees, that the defendant engaged in evasive actions designed to avoid contact with the state trooper. Having labeled the defendant's acts evasive, the majority's analysis proceeds syllogistically: the defendant's acts were evasive; evasive acts justify investigative stops; ergo, an investigative stop was justified here. Neither the fourth amendment nor the decisions of the United States Supreme Court permit this kind of conclusory analysis where the most fundamental of every citizen's rights is involved, the right to be left alone by the state. *See Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J. dissenting) (the makers of the constitution "conferred as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men."); *Bowers v. Hardwick*, 478 U.S. 186, 199, 106 S.Ct. 2841, 2848, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting.)

While the legality of the acts which give rise to a reasonable suspicion that criminal activity is afoot will not constitutionally preclude an investigative stop, the sheer number and frequency with which literally millions of similar acts are committed by the traveling public for entirely innocent reasons sheds light on the reasonableness of the suspicion of those acts. Therefore, I take exception to the majority's second premise, that evasive actions justify investigative stops.

The majority cites one case in support of its legal proposition that evasive actions alone may justify investigative stops, *Flor-*ida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). The Supreme Court's decision in *Rodriguez* simply does not support that proposition. While the defendants in *Rodriguez* did engage in evasive actions, they were not stopped for purpose of the fourth amendment until after they had clearly misidentified themselves to authorities. *Rodriguez*, 469 U.S. at 5–6, 105 S.Ct. at 310–311. The evasive actions in *Rodriguez* were not the only circumstances arousing suspicion. Thus, *Rodriguez* does not support an investigative stop in the fact situation before us. Ironically, the majority quotes Professor LaFave, who makes it quite clear that everyday, garden variety avoidance of the police does not justify an investigative stop. *See* 3 W. LaFave, *Search and Seizure* § 9.3(c), at 448–451 (second ed.1987). The majority opinion offers no authority other than *Rodriguez* to support its position nor does it respond to the cases from our sister jurisdictions, cited by the court of appeals, which have held that no reasonable basis exists for an investigative stop based on evasive actions standing alone. *See State v. Johnson*, 439 N.W.2d 400, 402–03 (Minn.App.1989); *see also* LaFave, *supra* § 9.3(c), at 450–451 (and cases cited therein). In light of the authority against the court's decision today, the right of citizens to be let alone by the state should prevail. While we may be reluctant to endorse the court of appeals' rule that evasive actions standing alone may never support an investigative stop, nevertheless, that rule comes closer to accurately stating the import of existing case law than does the opinion of the majority. I would affirm the decision of the court of appeals.

POPOVICH, Chief Justice.

I join in the dissent of Justice WAHL.