STATE of Minnesota, Respondent,

v.

Joel William SCHRUPP, Appellant.

No. C3–00–1566.

Court of Appeals of Minnesota.

May 15, 2001.

Mike Hatch, Attorney General, St. Paul, MN; and Kenneth N. Potts, Orono City Attorney, Wayzata, MN, for respondent.

Samuel A. McCloud, Kelly Vince Griffitts, Shakopee, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge, RANDALL and PETERSON, Judges.

## OPINION

SHUMAKER, Judge

The district court ruled that an investigatory stop of appellant's motor vehicle was legal and denied appellant's motion to suppress the fruits of that stop. Appellant challenges the district court's ruling on the ground that the officer lacked an articulable suspicion of illegal activity. We reverse.

## FACTS

In the district court, the parties stipulated that a police officer, stopped at an intersection in Orono, watched appellant Joel William Schrupp drive properly through the intersection. The officer pulled behind Schrupp's vehicle and began to follow it. After a short distance, Schrupp turned into a private driveway "so quickly" that the officer believed that Schrupp might have been trying to avoid him. The officer moved to a position from which he could see Schrupp's vehicle in the driveway. Schrupp spoke with the property owner, and while he did so the officer ran a check on the car's registration and learned that it was registered to a woman who lived in Glencoe, "not a local address."

About three minutes after entering the driveway, Schrupp pulled back onto the road and continued to drive. The officer made an investigatory stop and learned that Schrupp's driver's license had been cancelled. The officer arrested him for driving after cancellation of his license.

At his omnibus hearing, Schrupp moved to suppress the evidence of the cancella-

tion of his license on the ground that the stop was illegal. The district court denied the motion. After a trial on stipulated facts, the court found Schrupp guilty of the charge. Schrupp appealed.

## ISSUE

A police officer saw a male motorist turn his vehicle quickly from the road into a driveway, where the motorist spoke briefly to a person in the driveway. The officer learned that the vehicle was registered to a female in another city. Concluding that the motorist was trying to avoid him, the officer made an investigatory stop. Did the officer have a reasonable basis under the Fourth Amendment for the stop?

## ANALYSIS

■ We review the question of the legality of an investigatory stop de novo and underlying factual findings under a "clearly erroneous" standard. *State v. Britton,* 604 N.W.2d 84, 87 (Minn.2000).

This case occupies a narrow category of criminal matters, namely, those in which a law enforcement officer stops a motor vehicle without a warrant, without probable cause to arrest an occupant, and without observing any overt illegality, but with the beliefs that the driver is engaging in suspicious behavior and that further investigation is necessary. This category of cases is also limited to those in which the sole challenge is directed to the basis for the stop, thus focusing the judicial inquiry on whether the officer's action was justified at its inception.

The foundation for the appropriate judicial inquiry is described in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a case involving an investigatory stop of a person traveling on foot. *Terry* noted that investigatory stops implicate the Fourth Amendment to the Constitution of the United States and that the Fourth Amendment is made applicable to the states by the Fourteenth Amendment. *Id.* at 8, 88 S.Ct. at 1873. The Minnesota Supreme Court has held that the authority of *Terry v. Ohio* applies to investigatory motor vehicle stops. *State v. McKinley,* 305 Minn. 297, 303, 232 N.W.2d 906, 910 (1975).

■ The Fourth Amendment protects a person's right to be free from unreasonable governmental intrusion. *Terry,* 392 U.S. at 9, 88 S.Ct. at 1873. Thus, "the central inquiry * * * [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Id.* at 19, 88 S.Ct. at 1878–79. In examining the question of the reasonableness of an investigatory stop, we may properly consider the governmental interest of apprehending criminals:

> One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating *possibly criminal behavior* even though there is no probable cause to make an arrest.

*Id.* at 22, 88 S.Ct. at 1880 (emphasis added).

■ There is no fixed or definitive test for the reasonableness of an investigatory stop. *Id.* at 21, 88 S.Ct. at 1879. Rather, we must balance the need for the stop against the invasion the stop entails. *Id.* There can be no rational disagreement that an investigatory stop is necessary when the totality of the circumstances points to some observable "unusual conduct * * * [that leads the officer] reasonably to conclude in light of his experience that criminal activity may be afoot." *Id.* at 30, 88 S.Ct. at 1884. But the officer must articulate specific facts that, "taken togeth-

er with rational inferences from those facts," reasonably justify the stop. *Id.* at 21, 88 S.Ct. at 1880. The officer need not be absolutely certain of the possibility of criminal activity, but he cannot satisfy the test of reasonableness by relying on an "inchoate and unparticularized suspicion or 'hunch .'" *Id.* at 27, 88 S.Ct. at 1883. Nor will the officer's subjective good-faith belief suffice. *Id.* at 22, 88 S.Ct. at 1880.

 The law approves "legitimate and restrained investigative conduct undertaken on the basis of ample factual justification." *Id.* at 15, 88 S.Ct. at 1876–77. The proffered factual and inferential bases for the stop are assessed against an objective standard formulated in this question: "[W]ould the facts available to the officer at the moment of the seizure * * * warrant a [person] of reasonable caution in the belief that the [stop] was appropriate?" *Id.* at 21–22, 88 S.Ct. at 1880 (quotation omitted).

For guidance in how that question might be answered, we can look to *Terry*. There a detective with 39 years of police experience was patrolling a downtown area where he had been assigned to watch for shoplifters and pickpockets. *Id.* at 5, 88 S.Ct. at 1871. In mid-afternoon, he saw two men, with whom he was not familiar, standing on a corner. *Id.* He looked at them but they did not make eye contact. *Id.* The detective moved to a store entrance and established an observation post. *Id.* at 5, 88 S.Ct. at 1871–72. He saw one man leave the other, walk past some stores, look in a store window, continue down the street, turn around and walk past the same store and again look in the window. *Id.* at 6, 88 S.Ct. at 1872. The man then rejoined his companion and the two spoke briefly. *Id.* Then the second man engaged in the same movement pattern as the first. *Id.* The men "repeated this ritual alternately between five and six

times apiece—in all, roughly a dozen trips." *Id.* Eventually, a third man joined them and spoke with them. *Id.* When the third man left, the other two "resumed their measured pacing, peering and conferring" and then walked off in the direction the third man had taken. *Id.* One of them was Terry.

These were the detective's articulated facts. He concluded that the conduct was unusual and supported an inference that the men were "casing" a store and preparing to rob it. *Id.* He followed the men, stopped them, patted the outside of Terry's clothing and felt a pistol in his coat pocket. *Id.* at 6–7, 88 S.Ct. at 1872.

The *Terry* court noted that much of the behavior of the men was not unusual or suspicious, but rather was indicative of people waiting on the corner for someone and strolling and window-shopping while they waited. *Id.* at 22–23, 88 S.Ct. at 1881. However, at some point the conduct became unusual and suspicious because of its frequency and repetitive pattern. *Id.* The conduct then became consistent with a procedure that this trained detective knew from his vast experience to be casing. At that point, the detective believed that there was a possibility of criminal activity afoot and his intrusion into the men's freedom of movement was reasonable. Surely, any person of reasonable caution would also conclude that the unusual behavior pointed to the possibility of criminal activity. We also note that it is apparent that the detective had a "hunch" from nearly the outset that the men might be involved in nefarious activity, but he exercised restraint and did not act on his inchoate suspicion.

 Thus, *Terry* provides a template for answering the question of whether an investigatory stop is reasonable. Articulable, objective facts that, by their nature, quality, repetition, or pattern become so

unusual and suspicious that they support at least one inference of the possibility of criminal activity, are what will be necessary to justify an investigatory stop of a motor vehicle. Such facts existed in both *State v. Johnson,* 444 N.W.2d 824 (Minn. 1989), and *State v. Petrick,* 527 N.W.2d 87 (Minn.1995), cases the district court cited in denying Schrupp's motion. In each case, the driver of a motor vehicle engaged in unusual furtive and evasive conduct in the presence of law enforcement officers. Such unusual conduct constituted indicia of mens rea that supported at least one inference of the possibility of criminal activity, most likely driving without a license or driving while impaired.

Noted in *Johnson* are some types of motorist behavior that are not unusual and that standing alone will not provide justification for an investigatory stop. Merely watching the police "to avoid some minor misstep, such as a minor traffic violation," hesitating to pass a police car, appearing nervous or looking away from a police car, or quickening one's pace on seeing a police car are not unusual behaviors. *Johnson,* 444 N.W.2d at 826. The unusual behaviors that will justify a stop are like the conduct of the men in *Terry:*

> By contrast, such stops have been upheld when the individual made repeated efforts to avoid police contact, when he engaged in a combination of several different possibly furtive actions, and when the person engaged in a rather extreme

means of avoidance such as high-speed flight.

*Id.* (citation omitted).

 Turning to the instant case, the officer's articulated facts were that a man was driving a car registered to a woman; the owner's address was in a city other than where the car was being driven; and the driver pulled quickly into a driveway and shortly afterward returned to the road. The officer concluded that the driver "might be trying to avoid me," and on that basis the officer made an investigatory stop. The officer did not identify any inference of the possibility of criminal activity.

We hold that at the inception of the stop the officer's suspicion was inchoate and that no facts had ripened into the category of unusual behavior from which a reasonable inference of the possibility of criminal behavior could be drawn. Thus, the stop was an unreasonable intrusion into Schrupp's freedom of movement in violation of the Fourth Amendment.

## DECISION

The district court erred in denying appellant's motion to suppress the fruits of an unlawful investigatory stop.

**Reversed.**