*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0232**

State of Minnesota,
Respondent,

vs.

Sean Adam Peake,
Appellant.

**Filed January 30, 2017
Reversed and remanded
Stauber, Judge
Dissenting, Worke, Judge**

St. Louis County District Court
File No. 69HI-CR-14-758

Lori Swanson, Attorney General, Matthew Frank, Michael Everson, Assistant Attorneys General, St. Paul, Minnesota; and

Mark Rubin, St. Louis County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from his conviction of fifth-degree controlled-substance possession, following proceedings under Minn. R. Crim. P. 26.01, subd. 4, appellant argues that the

district court erred in denying his motion to suppress evidence discovered after a pat-frisk. Because the officer conducted the pat-frisk without reasonable, articulable suspicion of criminal activity and after the initial basis for the stop had been dispelled, we reverse.

**FACTS**

On October 5, 2014, around 2:00 a.m., Sergeant Brent Everett was traveling in his squad car in Hibbing when he drove by a parking lot and observed a white Chrysler with an open door and no one in the vicinity. Sergeant Everett found it unusual that the car door would be open in the middle of the night with nobody around. He initially suspected someone had illegally entered the vehicle, a "car prowl," so he investigated.

Sergeant Everett illuminated the Chrysler with his search light. As he exited the squad car, he observed appellant Sean Adam Peake exit the driver's side of a Chevy Blazer parked beside the Chrysler. Peake, dressed in dark clothes, walked quickly toward a nearby apartment building. Sergeant Everett suspected Peake was involved in a car prowl, he asked Peake to stop, and Peake complied.

Sergeant Everett approached Peake, who argued about being stopped. As Sergeant Everett was speaking to Peake, he noticed that Peake was placing his hands into his pockets. Sergeant Everett asked Peake to remove his hands from his pockets; Peake complied, but a short time later, he placed his hands back into his pockets. Sergeant Everett testified that he was unsure if Peake had a weapon or was trying to conceal or remove something from his pockets.

2

At the same time that he approached Peake, Sergeant Everett observed a female, K.C., exit the passenger side of the Chevy Blazer; he was familiar with K.C. and recognized her. K.C. walked over and stood between Sergeant Everett and Peake. Sergeant Everett suspected that K.C. was trying to conceal his view of Peake.

Sergeant Everett observed Peake place his hands in his pockets for a third time, so he ordered Peake and K.C. to place their hands on the hood of the Chrysler. Sergeant Everett testified that he was concerned Peake "was reaching for a weapon, or he was maybe trying to hide some sort of item." Based upon prior knowledge that K.C. was "involved in the use of controlled substances," Sergeant Everett suspected "maybe they're trying to conceal some controlled substances from me."

Sergeant Everett radioed for assistance, as he planned to conduct a pat-frisk of Peake and K.C. According to Sergeant Everett, while their hands were placed on the hood of the Chrysler, Peake and K.C. told Sergeant Everett that Peake was changing a headlight on K.C.'s car, the Chrysler. At this point, Sergeant Everett recognized K.C.'s car as the Chrysler with the open door, he "believed it to be her vehicle at that point."

Although Sergeant Everett no longer suspected a car prowl because he realized that the Chrysler belonged to K.C., he was still suspicious because (1) Peake was reaching his hands into his pockets and being argumentative; (2) he was unsure of what Peake and K.C. were doing in the Chevy Blazer; (3) it was unclear who owned the Chevy Blazer; (4) Peake had moved quickly away from the Chevy Blazer; and (5) he felt that K.C. had purposely tried to obscure his view of Peake. Based on his experience,

3

Sergeant Everett believed there was "something more going on" at the scene, though he had "no clue" as to exactly what was occurring.

Sergeant Everett then conducted a pat-frisk of Peake and discovered a pipe in the front pocket of Peake's jeans. Sergeant Everett removed the pipe; it contained residue believed to be methamphetamine. Sergeant Everett handcuffed Peake and continued to search him. He discovered another pipe and a small bindle with a white substance believed to be methamphetamine. Sergeant Everett then searched the Chevy Blazer and discovered a substance believed to be methamphetamine. Peake was charged with fifth-degree drug possession.

Peake moved to suppress the evidence, arguing that the search and seizure were unlawful. The district court found that the search and seizure were lawful, as a valid *Terry* stop and frisk, with the search motivated by both safety concerns and reasonable, articulable suspicion of criminal activity that remained even after Sergeant Everett became aware that the Chrysler belonged to K.C. Peake stipulated to the state's evidence under Minn. R. Crim. P. 26.01, subd. 4, and this appeal follows.

## D E C I S I O N

This case comes before us following a stipulated-evidence proceeding under Minn. R. Crim. P. 26.01, subd. 4. As such, our review is limited to the question of whether the district court properly denied Peake's pretrial motion to suppress evidence. *Id.*, subd. 4(f). In reviewing the district court's order, we review the findings of fact[1] for

---

[1] At oral argument, counsel for Peake conceded that there was no challenge to the district court's findings of fact.

clear error and the legal conclusions de novo. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). And we may independently review undisputed facts and determine if evidence must be suppressed as a matter of law. *Id.*

Peake argues that any suspicion of a car prowl was dispelled before the pat-frisk, and there was no reasonable, articulable suspicion of criminal activity when the pat-frisk was conducted. We agree. Sergeant Everett had no reasonable, articulable suspicion of criminal activity when he conducted the pat-frisk of Peake, and the evidence discovered as a result of that search must be suppressed.

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches are unreasonable, subject to a few specifically established exceptions. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366, 113 S. Ct. 2130 (1993). An officer may, under certain circumstances and without a warrant, conduct a brief pat-down search for weapons. *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-85 (1968). Under *Terry*, "even in the absence of probable cause, the police may stop and frisk a person when (1) they have a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous." *State v. Flowers*, 734 N.W.2d 239, 250 (Minn. 2007) (quotation omitted).

A suspicion of criminal activity must be more than a mere hunch; an officer must have objective support for his belief that an individual is involved in criminal activity. *State v. Johnson*, 444 N.W.2d 824, 825–26 (Minn. 1989). In assessing reasonable

5

suspicion, Minnesota courts "consider the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001).

Here, the parties agree that the initial investigation was justified based upon suspicion that Peake was involved in a car prowl. *See State v. Matinson*, 581 N.W.2d 846, 850 (Minn. 1998) (stating a brief investigatory stop is permissible if there is reasonable suspicion of criminal activity). But "[a]n initially valid stop may become invalid if it becomes intolerable in its intensity or scope." *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004) (quotation omitted).

Prior to conducting the pat-frisk of Peake, Sergeant Everett recognized K.C.'s car as the Chrysler with the open door, and at that point, Sergeant Everett's original suspicion of a car prowl was dispelled. Thus we must determine whether the subsequent pat-frisk was still reasonable.

Respondent argues that the pat-frisk was justified, even if the suspicion of wrongdoing was dispelled, because Sergeant Everett was "in a position where officer safety was compromised." We disagree. If the evidence justifying a forcible stop is dispelled, a pat-frisk is impermissible. *State v. Payne*, 406 N.W.2d 511, 513 (Minn. 1987). Further, "[e]vidence obtained as a result of a seizure without reasonable suspicion must be suppressed." *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011).

Respondent also argues that suspicion of criminal activity remained, even after the suspicion of the car prowl had been dispelled. The district court reached this conclusion,

6

stating that the suspicion of criminal activity "was not dissipated by [K.C.'s] explanation that she owned the [Chrysler]." Indeed, the scope and duration of a stop may be expanded if an officer develops reasonable, articulable suspicion of other criminal activity "within the time necessary to resolve the originally-suspected offense." *State v. Wiegand*, 645 N.W.2d 125, 135-36 (Minn. 2002).

Here, Sergeant Everett put forth a number of bases to support his suspicion of criminal activity: (1) Peake was reaching his hands into his pockets and being argumentative; (2) Sergeant Everett was unsure of what Peake and K.C. were doing in the Chevy Blazer; (3) it was unclear who owned the Chevy Blazer; (4) Peake had moved quickly away from the Chevy Blazer; and (5) Sergeant Everett felt that K.C. had purposely tried to obscure his view of Peake. The totality of these bases do not constitute a reasonable, articulable suspicion of criminal activity.

Sergeant Everett testified that he was concerned because Peake was reaching his hands into his pockets. However, in this case, this fact does not constitute reasonable, articulable suspicion. Placing one's hands into one's pockets is not illegal, and there was no reason to suspect that Peake was concealing drugs or had an illegal weapon. There is no indication that Sergeant Everett asked Peake what was in his pockets. Sergeant Everett had seen no indicia of drug use, and there were no indications Peake had committed or was going to commit any crime, let alone a crime of violence. While Sergeant Everett was familiar with K.C. as a known drug user, merely being around or associating with someone "who may have previously engaged in criminal activity is not

7

enough to support reasonable suspicion of possession of a controlled substance." *Diede*, 795 N.W.2d at 844.

Peake was told either once or twice to remove his hands from his pockets before being ordered to place his hands on the hood of the Chrysler. Furtive, suspicious movements may give rise to a reasonable suspicion of criminal activity. *Flowers*, 734 N.W.2d at 252. But Minnesota courts are generally reluctant to rely on nervous and fidgety behavior as evidence to support a reasonable, articulable suspicion of criminal activity. *State v. Burbach*, 706 N.W.2d 484, 490 (Minn. 2005). In this instance, Peake's act of putting his hands in his pockets is not enough to constitute reasonable, articulable suspicion of criminal activity. And, although Peake may have argued with Sergeant Everett after being stopped, he complied with Sergeant Everett's commands. Additionally, Sergeant Everett testified that another officer arrived before the pat down search began.

Sergeant Everett testified that he was unsure of what Peake and K.C. were doing in the Chevy Blazer, but being unsure is not a particularized and objective fact. Likewise, he testified that it was unclear who owned the Chevy Blazer; however, there was no objective basis to suspect the vehicle was stolen; Peake told Sergeant Everett that the Chevy Blazer was his; and K.C. stated that they were changing a headlight on K.C.'s Chrysler. There is also no indication that Sergeant Everett asked Peake for proof of ownership.

Peake moved quickly towards a nearby apartment complex before being asked to stop by Sergeant Everett, but there is no indication that Peake ran from Sergeant Everett,

8

and Peake immediately complied when Sergeant Everett asked him to stop. Sergeant Everett also suspected that K.C. was attempting to obscure his view of Peake. However, K.C.'s act of simply walking between the officer and Peake is not an objective basis to suspect that Peake was engaged in criminal activity.

Under the totality of the circumstances, there was no objective reason to suspect that Peake was engaged in criminal activity. Sergeant Everett's testimony is very telling:

> I still don't know why he was reaching his hands in his pockets, um, I don't know what they were doing in this other vehicle… I still didn't know whose vehicle it was, the [Chevy Blazer] that was parked next to the [Chrysler]. I had no clue what was going on there.

Sergeant Everett admittedly had no clue. While Sergeant Everett may have suspected that there was "something more going on," he was unable to sufficiently articulate his suspicions. Because Sergeant Everett did not have reasonable, articulable suspicion of criminal activity when he conducted the pat-frisk, and the original justification for the stop had been dispelled, Peake's pretrial motion to suppress evidence should have been granted.

**Reversed and remanded.**

**WORKE**, Judge (dissenting)

I respectfully dissent. While the majority concludes that there was no reasonable, articulable suspicion of criminal activity, I conclude otherwise. My independent review of the facts known to the officer at the time of the pat-frisk shows that it was supported by reasonable, articulable suspicion. *See State v. Lugo*, 887 N.W.2d 476, 484 (Minn. 2016).

The reasonable-articulable-suspicion standard is not high. *Id.* at 486. Appellate courts "are deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye." *State v. Britton*, 604 N.W.2d 84, 88-89 (Minn. 2000).

Here, Sergeant Everett, an officer with 14 years of experience, had a reasonable belief that Peake might be involved in a crime and might be armed and dangerous. Sergeant Everett pointed to a number of objective facts to support his suspicion that criminal activity was afoot: (1) Peake, dressed in dark-colored clothing, walked quickly away from the scene; (2) Peake continued to put his hands in his pockets despite Sergeant Everett's commands to stop such conduct; and (3) Peake grew increasingly argumentative over the course of the stop. Additionally, officer safety in such instances is concerning.

Peake's actions were objectively suspicious. When Sergeant Everett illuminated the Chrysler, Peake did not approach the officer and explain the situation. Rather, Peake walked quickly away from the scene. Then, after being ordered to stop, he became argumentative and repeatedly placed his hands in his pockets, despite Sergeant Everett's commands to cease such conduct. These objective facts constitute a reasonable, articulable suspicion. Even seemingly innocent factors, in the aggregate, can support a finding of

reasonable suspicion.  *State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998).  Although Sergeant Everett was unsure of the exact nature of the criminal activity, he suspected drugs or a weapon, his objective suspicion, based on his experience as an officer, proved to be accurate.