*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-1290**

State of Minnesota,
Appellant,

vs.

Mary Lynn Boline,
Respondent.

**Filed February 6, 2017**
**Affirmed**
**Reyes, Judge**

Hennepin County District Court
File No. 27-CR-16-749

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Peter A. MacMillan, Crystal City Attorney, MacMillan, Wallace & Athanases, P.L.L.C., Minneapolis, Minnesota (for appellant)

Kyle J. Dreger, Gerald Miller, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by T. Smith, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant State of Minnesota challenges the district court's order granting respondent Mary Lynn Boline's pretrial motion to suppress evidence, arguing that the

district court erred in concluding that the police officer lacked reasonable, articulable suspicion to justify stopping respondent's car. We affirm.

## FACTS

On January 10, 2016, around 1:30 a.m., a police officer began following respondent's car after she left a bar on southbound West Broadway. The officer used radar to determine that respondent was driving 24 mph in a 35 mph zone. The officer observed respondent use her blinker to indicate a left turn, but she then turned off her blinker and continued her course. At the next cross street, respondent reactivated her left blinker and turned left.

Next, the officer saw respondent pull into the second driveway on the cross street. He proceeded to run a license-plate check and determined that the car's registered owner lived in a neighboring city. He observed that respondent was driving in the opposite direction of the car's registered address. After circling the neighborhood, the officer saw respondent turning onto northbound West Broadway and resumed following her. Shortly thereafter, West Broadway expanded from one to two northbound lanes. The officer initiated a traffic stop after observing that respondent did not use her blinker upon entering the rightmost lane as the road expanded to two northbound lanes. After speaking with respondent and administering field sobriety tests, the officer formed the opinion that respondent was driving while under the influence of alcohol and placed her under arrest.

Respondent was later charged with third-degree driving under the influence of alcohol, second-degree test refusal, and possession of marijuana. She moved the district

court to suppress the evidence obtained from the stop, asserting that there was no legal basis for the stop. The state argued that the stop was justified based on the officer's observations prior to the road expanding to two northbound lanes and respondent's failure to signal when the road expanded to two northbound lanes in violation of Minn. Stat. § 169.19, subd. 4 (2014).

At the omnibus hearing, the officer testified that he found the following conduct to be odd or indicative of an attempt to evade police: (1) driving 11 mph slower than the 35 mph speed limit; (2) making a quick turn and parking in a driveway that was different from the car's registered address; and (3) turning onto northbound West Broadway shortly after traveling on southbound West Broadway. The officer also noted that this conduct occurred around 1:30 a.m., and "there's definitely a possibility that [respondent] was leaving the bar, that potentially [respondent] was under the influence of alcohol, and [was] trying to evade [the officer]." When asked why he did not initiate a traffic stop prior to the alleged traffic violation, the officer stated, "I didn't feel that I had a legal reason to make a traffic stop. It was suspicious, and it was something that drew my attention to that vehicle. However, at that point in time, I did not see a solid statutory violation to make a traffic stop." He further noted that it "[w]ould've been a weak stop [prior to the alleged traffic violation]."

The district court granted respondent's motion to suppress, concluding that the officer lacked reasonable, articulable suspicion and that respondent did not violate Minn. Stat. § 169.18, subd. 4. The state's appeal follows.

## DECISION

Where the facts are undisputed, our review of a pretrial suppression order is de novo. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005). On appeal, the state must clearly and unequivocally demonstrate that the order will have a critical impact on the state's ability to successfully prosecute the defendant and that the order was erroneous. *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quotation omitted). Evidence obtained as the result of a constitutional violation must be suppressed. *State v. Jackson*, 742 N.W.2d 163, 177-78 (Minn. 2007). Here, it is undisputed that the critical-impact element is met because the district court's order precludes the state from introducing any evidence stemming from the traffic stop, which is necessary to show that respondent committed the charged offenses. Accordingly, our analysis addresses whether the district court erroneously determined that the officer did not have a particularized and objective basis for the stop.

To justify a brief investigatory traffic stop, police must have a reasonable, articulable suspicion of criminal activity. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014); *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). "The reasonable-suspicion standard is not high." *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011) (quotation omitted). "The officer need not be absolutely certain of the possibility of criminal activity, but he cannot satisfy the test of reasonableness by relying on an inchoate and unparticularized suspicion or hunch." *State v. Schrupp*, 625 N.W.2d 844, 847 (Minn. App. 2001) (quotation omitted), *review denied* (Minn. July 24, 2001). A stop will be upheld when police can articulate a particular objective basis for the stop. *State v.*

4

*Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). A traffic violation, no matter how insignificant, generally provides such a basis. *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004).

**I.      Respondent's driving conduct prior to the alleged traffic violation**

First, the state argues that the district court's suppression order was erroneous because the officer's observations, prior to the road expanding to two northbound lanes, gave rise to a reasonable, articulable suspicion. The state maintains that the officer articulated specific facts upon which he based his suspicion of criminal activity. The officer observed respondent driving at a lawful speed after leaving a bar around 1:30 a.m., parking in a driveway that differed from the car's registered address, and turning back on to West Broadway shortly thereafter to drive in the direction of the car's registered address. The officer testified that such conduct was "odd" and indicated a possibility that respondent was under the influence of alcohol and was trying to evade him. However, despite these observations, the officer chose not to initiate a traffic stop at that time because it "[w]ould've been a weak stop at that point"; he stated at the hearing, "I didn't feel that I had a legal reason to make a traffic stop."

As noted in *State v. Johnson*, there are some types of motorist behavior that are not unusual and, standing alone, will not provide justification for an investigatory stop. 444 N.W.2d 824, 826 (Minn. 1989). Here, the only observation pertaining to respondent's driving style was that she was traveling below the speed limit. However, contrary to the state's assertion, it is not odd or unusual to travel below the speed limit when driving in dark conditions. And, unlike the facts of *State v. Haataja*, the record

5

does not indicate that respondent's slow driving was impeding traffic. 611 N.W.2d 353, 355 (Minn. App. 2000), *review denied* (Minn. May 16, 2000).

The facts of this case are also distinguishable from *Johnson*, where the defendant exited the highway after making eye contact with a police officer. 444 N.W.2d at 825. Shortly thereafter, the officer saw the defendant reemerge back onto the highway and inferred that he was attempting to avoid the officer. *Id.* Under those facts, the supreme court determined that the officer had a sufficient basis to stop the driver, reasoning that "if the driver's conduct is such that the officer reasonably infers that the driver is deliberately trying to evade the officer and if, as a result, a reasonable police officer would suspect the driver of criminal activity, then the officer may stop the driver." *Id.*

Here, there is no suggestion that respondent's conduct constituted a deliberate attempt to evade the officer, nor is there any indication that respondent knew the officer was following her. Therefore, the facts of *Johnson* are distinguishable from the current case, and the officer's suspicion that respondent engaged in furtive conduct to evade a traffic stop was unreasonable. *See State v. Schrupp*, 625 N.W.2d 844 (Minn. App. 2001) (holding officer did not have sufficient justification where a man was driving a car registered to a woman; the owner's address was in a city other than where the car was being driven; and the driver pulled quickly into a driveway and returned to the road shortly), *review denied* (Minn. July 24, 2001).

The state further maintains that we must view the evidence from the perspective of an objective officer, and "[t]he fact that the officer [did] not believe the facts sufficient [to support the stop] is not the issue." Here, the officer chose not to initiate a stop before

6

the alleged traffic violation and later testified to his doubt regarding the existence of a reasonable, articulable suspicion based solely on respondent's earlier driving conduct. Accordingly, the officer's decision-making and testimony further support the district court's conclusion that, under the applicable objective analysis, "the facts available to the officer at the moment of the seizure . . . [would not] warrant a man of reasonable caution in the belief that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880 (1968).

## II.     Respondent's alleged traffic violation

Second, the state argues that the district court's suppression order was erroneous because respondent violated Minn. Stat. § 169.19, subd. 4, by failing to use her blinker. In response, respondent argues that she did not violate the statute because she "was simply following the fog line and remaining in the most right lane."

Statutory interpretation based on a given set of facts is a legal question, which we review de novo. *Dep't of Pub. Safety v. Van Bus Delivery Co.*, 400 N.W.2d 759, 760 (Minn. App. 1987). When a statute's text is plain and unambiguous, a court must not engage in further construction. *Anderson*, 683 N.W.2d at 821. Statutes are ambiguous when their language is subject to more than one reasonable interpretation. *Id.* at 822. "In reading a traffic regulation, the court may view the statute as a whole and consider its purpose and what it regulates." *State v. Bissonette*, 445 N.W.2d 843, 845 (Minn. App. 1989) (citation omitted).

The statute at issue in this case provides:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in this section, or turn a vehicle to enter a private road or driveway or *otherwise turn a vehicle from a direct course or move right or left upon a highway unless and until the movement can be made with reasonable safety after giving an appropriate signal* in the manner hereinafter provided.

Minn. Stat. § 169.19, subd. 4 (emphasis added). This court has determined that the statute requires the use of a turn signal when changing lanes on a highway regardless of whether other traffic will be affected. *Bissonette*, 445 N.W.2d at 846.

The plain language of Minn. Stat. § 169.19, subd. 4, requires drivers to signal when "turn[ing] a vehicle from a direct course or moving right or left upon a highway." There is no language requiring drivers to signal in situations where, as here, a road expands to add an additional lane. Respondent did not move right or left upon the highway or cross the broken white line when entering the rightmost lane on West Broadway. Such conduct is readily distinguishable from the typical highway lane change between established lanes, as addressed in *Bissonette*. *See* 445 N.W.2d at 844 (noting defendant's failure to signal before several highway lane changes). Nor did she turn her car from a direct course. Put another way, respondent merely continued to follow the fog line and remained in the rightmost lane as the roadway expanded from one to two northbound lanes.

Accordingly, we conclude that the officer's suspicion was inchoate because respondent's conduct did not support an objectively reasonable suspicion of criminal activity. Moreover, respondent maintained a direct course and did not move right or left

8

upon a highway by following the fog line and remaining in the rightmost lane, without using her blinker.  This did not constitute a violation of Minn. Stat. § 169.19, subd. 4, justifying an investigatory traffic stop.  Therefore, the district court did not err in granting respondent's motion to suppress the evidence obtained from the stop.

**Affirmed.**